**Michael ROMANO, Plaintiff–Appellant,**

v.

**Ivan CANUTESON, Defendant–Appellee.**

**No. 2029, Docket 93–7290.**

United States Court of Appeals,
Second Circuit.

Argued Sept. 23, 1993.

Decided Dec. 17, 1993.

Barry J. Donohue, Tonawanda, NY, for plaintiff-appellant.

Frank K. Walsh, Asst. Atty. Gen. of the State of N.Y., Albany, NY (Robert Abrams, Atty. Gen., Peter H. Schiff, Deputy Sol. Gen., and Peter G. Crary, Asst. Atty. Gen.), for defendant-appellee.

Before: VAN GRAAFEILAND, WALKER and JACOBS, Circuit Judges.

VAN GRAAFEILAND, Circuit Judge:

Michael Romano appeals from a summary judgment of the United States District Court for the Western District of New York (Maxwell, Mag. J.) dismissing on qualified immunity grounds Romano's claim that his constitutional right to due process was violated because he was suspended from his employment without a prior hearing. We affirm.

Ivan Canuteson is the Director of the J.N. Adam Developmental Center and Developmental Disabilities Service Offices, which operates under the jurisdiction of the New York State Office of Mental Retardation and Developmental Disabilities. *See* N.Y. Mental Hyg. Law § 13.17. Romano is employed as a mental hygiene therapy aide at the Center. On December 13, 1990, Bob Haenszel, Director of Human Resources at J.N. Adam, questioned Romano about tape residue discovered around the face, head and neck of a patient. Haenszel informed Canuteson of the situation and Canuteson ordered an investigation.

On December 21, 1990, Haenszel delivered a report of the investigation to Canuteson.

The report summarized interviews with five employees of the facility, including Romano, and stated that no evidence existed to support Romano's claim that the patient had taped himself. It concluded that Romano had taped the patient's mouth to stop him from vomiting and that Romano had lied about discussions he had had with other staff members concerning the incident. The report recommended that Romano be suspended without pay and terminated.

After reviewing the report, Canuteson requested and received authorization from the State Office to suspend Romano without pay pending disciplinary proceedings. On December 24, 1990, Canuteson notified Romano that, in accordance with the collective bargaining agreement then in effect between the State and the Civil Service Employees Association, Romano was suspended without pay pending resolution of the charges of abusing a patient, lying during an investigation and failing to document certain events. Arbitration of Romano's suspension subsequently was scheduled but a settlement was reached before the arbitration took place. A letter of reprimand was placed in Romano's record and he was returned to work. In addition, he was paid the wages that he had lost.

Romano brought suit in the United States District Court for the Western District of New York. After some preliminary skirmishing, the action was referred by consent to Magistrate Judge Maxwell for disposition pursuant to 28 U.S.C. § 636(c), which also permits appeals such as the instant one to be taken directly to this Court. The central issue on the appeal is whether the magistrate judge erred in granting summary judgment in favor of Canuteson on the ground that Canuteson was entitled to qualified immunity. Romano contends that recent federal law clearly established that, as a public employee, he had a right to be heard prior to suspension without pay and that this right could not be waived in a collective bargaining agreement. He also contends that a reasonable official in Canuteson's position would have understood that Romano's suspension without a prior hearing was unlawful. We agree with the magistrate judge that, where, as here, the challenged procedure accorded with the provisions of the employees' collective bargaining agreement, the due process right that Romano asserts was not clearly established at the time of Romano's suspension.

■ Over a decade ago, New York State courts announced that due process requirements are not of controlling relevance if the party seeking to assert them has waived them in a voluntary agreement such as a collective bargaining agreement. *See Di Lorenzo v. Carey*, 62 A.D.2d 583, 588–89, 405 N.Y.S.2d 356, *appeal dismissed*, 45 N.Y.2d 837, 409 N.Y.S.2d 1033, 381 N.E.2d 631 (1978), *cert. denied*, 440 U.S. 914, 99 S.Ct. 1229, 59 L.Ed.2d 463 (1979); *Antinore v. State of New York*, 49 A.D.2d 6, 10, 371 N.Y.S.2d 213 (1975), *aff'd*, 40 N.Y.2d 921, 389 N.Y.S.2d 576, 358 N.E.2d 268 (1976); *see also Blackmon v. Feinstein*, 39 A.D.2d 642, 331 N.Y.S.2d 137 (1972) (mem.); *Engblom v. Carey*, 677 F.2d 957, 965 (2d. Cir.1982) (citing *McIntyre v. New York City Dep't of Correction*, 411 F.Supp. 1257 (S.D.N.Y.1976)); *Smith v. Carey*, 473 F.Supp. 268, 273 (S.D.N.Y.1979) (citing same). Indeed, compliance by directors with all requirements and protection of employee rights pursuant to collective bargaining agreements has been a long-standing statutory requirement in New York State. *See* N.Y. Mental Hyg. Law § 13.21(e)(2).

Admittedly there is some recent federal authority that appears to cast doubt on this accepted state rule. *See Burka v. New York City Transit Auth.*, 744 F.Supp. 63, 66 (S.D.N.Y.1990). However, unlike the instant case, *Burka* did not involve a suspension of employment; it involved the discharge of several employees, which was held in a prior decision to have been based on the discovery of drugs in unlawfully seized urine samples. *See Burka v. New York City Transit Auth.*, 739 F.Supp. 814 (S.D.N.Y.1990). Moreover, the doctrine enunciated in the later *Burka* decision has not been universally adopted in other federal courts. *See, e.g., Costello v. Town of Fairfield*, 811 F.2d 782, 786 (2d Cir.1987) (Van Graafeiland, J., concurring) ("It is well settled that a procedure for post-deprivation arbitration of grievances created under a collective bargaining agreement

may, in appropriate circumstances, satisfy the requirements of due process."); *Erie Telecommunications, Inc. v. City of Erie,* 853 F.2d 1084, 1099 (3d Cir.1988) ("[W]e know of no doctrine, and [plaintiff] has directed us to no case law, providing a *per se* rule that constitutional claims, even first amendment claims, may not be waived."); *Leonard v. Clark,* 758 F.Supp. 616, 619–20 (D.Or.1991); *see generally Patterson v. Illinois,* 487 U.S. 285, 292–97, 108 .S.Ct. 2389, 2394–97, 101 L.Ed.2d 261 (1988); *D.H. Overmyer Co. v. Frick Co.,* 405 U.S. 174, 184–87, 92 S.Ct. 775, 781–83, 31 L.Ed.2d 124 (1972).

The doctrine of qualified immunity recently has been discussed on a number of occasions by this Court. The following excerpt from *Zinker v. Doty,* 907 F.2d 357, 359 (2d Cir.1990), *cert. denied,* 498 U.S. 1041, 111 S.Ct. 712, 112 L.Ed.2d 701 (1991), is illustrative:

In *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), the Court discussed the competing societal interests that led to the adoption of the doctrine of qualified immunity. *Id.* at 813–15, 102 S.Ct. at 2735–37. The Court concluded that, if public officials are not to be dissuaded from the "unflinching discharge of their duties," they must be shielded from liability in performing their discretionary functions so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Id.* at 814, 818–19, 102 S.Ct. at 2736, 2738–39. Because the test of reasonableness thus prescribed is an objective one, the Court held further that, in most cases, the defense of qualified immunity properly lends itself to summary disposition. *Id.* at 818, 102 S.Ct. at 2738. In subsequent decisions, the Court enlarged upon and refined the rule thus expressed. *See, e.g., Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986) (qualified immunity defense protects "all but the plainly incompetent or those who knowingly violate the law"); *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987) ("The contours of the right must be sufficiently clear that a rea-

sonable official would understand that what he is doing violates that right.").

*See also Christopher P. by Norma P. v. Marcus,* 915 F.2d 794, 798 (2d Cir.1990), *cert. denied,* 498 U.S. 1123, 111 S.Ct. 1081, 112 L.Ed.2d 1186 (1991); *P.C. v. McLaughlin,* 913 F.2d 1033, 1039 (2d Cir.1990). In line with the teachings of these cases, we agree with Magistrate Judge Maxwell that Canuteson did not violate a clearly established constitutional right in suspending Romano and that Canuteson therefore was entitled to qualified immunity. We find no evidence of intentional abuse of authority that arguably might deprive Canuteson of the protection afforded him by this doctrine.

◾ Romano's claim of a First Amendment violation merits little discussion. Although a fanciful First Amendment claim was asserted in Romano's complaint, Magistrate Judge Maxwell properly rejected it in his January 27, 1992 Report and Recommendation to District Judge Arcara on the ground that the allegations of the complaint lacked the requisite specificity to state a cause of action. *See Alfaro Motors, Inc. v. Ward,* 814 F.2d 883, 887 (2d Cir.1987). Romano's attorney withdrew his objection to Magistrate Judge Maxwell's Report on March 9, 1992 and the Report was adopted and made the final order of the district court on March 16, 1992. Thus, Romano has failed to preserve a right of review by this Court of the magistrate judge's ruling. *See Wesolek v. Canadair Ltd.,* 838 F.2d 55, 58 (2d Cir. 1988). Were we inclined to excuse this waiver of objection, we nonetheless would affirm the summary judgment under appeal because. of the absence of error in the magistrate judge's recommended dismissal of Romano's First Amendment claim.

We find no other contention that merits discussion. The judgment of the magistrate judge is affirmed.