**Daniel J. CIAMBRIELLO,**
**Plaintiff–Appellant,**

v.

**COUNTY OF NASSAU, Civil Service Employees Association, Inc., Russell Rinchiuso, Richard Cotugno and Ron Roeill, Defendants–Appellees.**

Docket No. 01–7556.

United States Court of Appeals,
Second Circuit.

Argued: Jan. 11, 2002.

Decided: June 4, 2002.

Lewis M. Wasserman, Wasserman & Steen, Patchogue, NY, for Plaintiff–Appellant Daniel J. Ciambriello.

Peter A. Bee, Bee, Eisman & Ready, LLP, Mineola, NY (W. Matthew Groh, on the brief), for Defendants–Appellees County of Nassau, Russell Rinchiuso, and Richard Cotugno.

William A. Herbert, Albany, NY (Leslie C. Perrin, on the brief), for Defendants–Appellees Civil Service Employees Association, Inc. and Ron Roeill.

Before: SACK, B.D. PARKER, and B. FLETCHER,* Circuit Judges.

Judge SACK concurs in part and dissents in part in a separate opinion.

B.D. PARKER, JR., Circuit Judge.

Plaintiff Daniel J. Ciambriello, an employee of defendant County of Nassau (the "County") and a member of defendant Civil Service Employees Association, Inc. ("CSEA"), brought this action under 42 U.S.C. § 1983, alleging that his demotion from one civil service position to another deprived him of property without due process of law in violation of the Fourteenth Amendment to the United States Constitution. Ciambriello also asserted a claim for unlawful conspiracy in violation of § 1983, as well as several state law claims. Defendants moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The District Court (Leonard D. Wexler, *Judge*) granted the motion, dismissing Ciambriello's § 1983 claims because he failed to allege a property interest in his position and declining to exercise supplemental jurisdiction over the state law claims. *Ciambriello v. County of Nas-*

* The Honorable Betty B. Fletcher of the United States Court of Appeals for the Ninth Circuit, sitting by designation.

*sau,* 137 F.Supp.2d 216 (E.D.N.Y.2001). Ciambriello appealed. We affirm in part, vacate in part, and remand.

## BACKGROUND

Ciambriello began working for the County's Department of Public Works in November 1992 as an Equipment Operator I ("EO–I"), a position that the County assigns to the "non-competitive class" of its classified civil service. He worked as an EO I until August 1997, when he was promoted to the position of Plant Maintenance Mechanic II ("PMM–II"), also in the non-competitive class. Following Ciambriello's promotion to PMM–II, CSEA filed a grievance with the County on behalf of four employees—defendant Ron Roeill, Eugene Romanger, Anthony Saponaro, and Joseph Scali—arguing that the County had promoted Ciambriello to PMM–II in violation of the collective bargaining agreement between the County and CSEA (the "CBA"). Pursuant to the CBA's grievance procedures, CSEA's grievance culminated in an arbitration hearing on January 7, 1999, in which the County and CSEA participated. Ciambriello did not receive notice of the grievance, the arbitration, or any of the intervening steps, and as a result he did not participate in any of the grievance proceedings. At the January 7, 1999 hearing, the County and CSEA both presented evidence and argument. The County and CSEA stipulated that the issues to be determined in the arbitration were:

1. Did the County violate the Collective Bargaining Agreement when it promoted Daniel Ciambrello [sic] to the position of Plant Maintenance Mechanic II?

2. If so, what is the appropriate recommended remedy?

Following the hearing, the arbitrator issued an advisory award on February 1, 1999 stating that (1) the County had violated the CBA in promoting Ciambriello to PMM–II, (2) Ciambriello's position must be vacated and refilled within sixty days, and (3) the County must consider Roeill, Romanger, Saponaro, and Scali for the PMM–II position. CSEA commenced an action in New York Supreme Court seeking confirmation of the arbitrator's award. The County defaulted in the state court action, and the Supreme Court confirmed the award. On March 6, 2000, Ciambriello received notice that he had been discharged from the PMM–II position and would be reassigned to the EO–I position—the position that he had occupied prior to his promotion—effective March 10, 2000. On March 10, 2000, Ciambriello was reassigned to EO I and Roeill was appointed to PMM–II in his place. As a result of the reassignment, Ciambriello suffered a demotion in grade and a reduction in salary and benefits.

Ciambriello did not pursue a grievance in accordance with the procedures outlined in the CBA. Instead, he commenced this action in July 2000, alleging four claims: denial of procedural due process in violation of the Fourteenth Amendment, conspiracy to deny procedural due process in violation of the Fourteenth Amendment, breach of CSEA's duty of fair representation, and breach of the CBA. The defendants moved to dismiss under Rule 12(b)(6).

After reviewing the allegations of Ciambriello's complaint and reciting the standard applied to a Rule 12(b)(6) motion, the District Court examined whether Ciambriello had alleged a property interest in his pre-demotion position. The court observed that any property interest that Ciambriello might have "must incorporate the terms of the CBA that apply to the factual situation at hand." *Ciambriello,* 137 F.Supp.2d at 223. In particular, the

District Court found the seniority provision of the CBA to be relevant, stating that, while Ciambriello would otherwise have a property interest in continued employment at the PMM–II level, this interest was "necessarily limited by the seniority terms of the CBA." *Id.* at 222–23. The court ultimately determined that Ciambriello's promotion violated the CBA's seniority provision, concluding, "Because the right sought to be protected here is a right finding no support in the CBA, it is not a right to which Plaintiff had a 'legitimate claim of entitlement' and therefore, not a property right upon which a Section 1983 claim can be sustained." *Id.* at 223. Having concluded that Ciambriello failed to allege a property interest in his position, the District Court dismissed the § 1983 claims and declined to exercise supplemental jurisdiction over the state law claims. *Id.* Ciambriello timely appealed.

### DISCUSSION

We review *de novo* a district court's dismissal pursuant to Rule 12(b)(6). *Bernheim v. Litt,* 79 F.3d 318, 321 (2d Cir. 1996). Accepting all factual allegations in the complaint as true, the court should not dismiss unless Ciambriello can prove no set of facts which would entitle him to relief. *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152 (2d Cir.2002).

### I. Due Process Claim

█ In reviewing the dismissal of Ciambriello's § 1983 claim for violation of his Fourteenth Amendment procedural due process rights, we apply the familiar two-step inquiry. We must determine (1) whether Ciambriello possessed a liberty or property interest and, if so, (2) what process he was due before he could be deprived of that interest. *Green v. Bauvi,* 46 F.3d 189, 194 (2d Cir.1995).

### A. Property Interest

█ The threshold questions are whether Ciambriello has alleged a state law property interest, and whether the Fourteenth Amendment protects that interest. Because Ciambriello was demoted from the PMM–II position to the EO–I position, and not terminated altogether, the question is not whether he possessed a property interest in employment generally, but whether he possessed a property interest in the PMM–II position in particular. Property interests are not created by the Constitution; rather, "they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Bd. of Regents of State Colls. v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). In order to have had a property interest in the PMM–II position, Ciambriello must have had "a legitimate claim of entitlement to it." *Id.* A public employee has a property interest in continued employment if the employee is guaranteed continued employment absent "just cause" for discharge. *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir.1991). While state law determines whether a public employee has a property interest in continued employment, "federal constitutional law determines whether that interest rises to the level of a legitimate claim of entitlement protected by the Due Process Clause." *Ezekwo v. NYC Health & Hosps. Corp.,* 940 F.2d 775, 782 (2d Cir.1991) (citation and internal quotation marks omitted) (noting that "not every contractual benefit rises to the level of a constitutionally protected property interest").

Ciambriello argues that New York Civil Service Law Section 75 is the source of his property interest in continued employment

at the PMM–II position. Section 75 states that a covered employee "shall not be removed or otherwise subjected to any disciplinary penalty provided in this section except for incompetency or misconduct shown after a hearing upon stated charges pursuant to this section." N.Y. Civ. Serv. L. § 75(1) (McKinney 1999). We have recognized that " § 75 gives covered employees a property interest in their employment, so that they may not be terminated without notice and hearing." *O'Neill v. City of Auburn*, 23 F.3d 685, 688 (2d Cir. 1994). Section 75 rights, however, may be modified or replaced by a collective bargaining agreement. N.Y. Civ. Serv. Law § 76(4) (McKinney 1999). Here, § 10–1 of the CBA replaced whatever rights Ciambriello would otherwise have derived from § 75, providing:

> Except where an accrediting agency regulating a County department requires otherwise, the provisions of this section shall be exclusive for all persons in the negotiating unit and shall be in lieu of any and all other statutory or regulatory disciplinary protections.

Because the provisions of CBA § 10 are "in lieu of any and all ... statutory and regulatory disciplinary protections," CBA § 10 replaced § 75. Thus, if Ciambriello had a property interest in the PMM–II position, that property interest could not have derived from § 75, or any similar statute or regulation, and must have been created by the CBA itself. We have repeatedly recognized that a collective bargaining agreement may give rise to a property interest in continued employment. *See Moffitt*, 950 F.2d at 885 (finding that plaintiff had a property interest in his employment as a result of collective bargaining agreement provision stating that he could not be fired without just cause); *Dobosz v. Walsh*, 892 F.2d 1135, 1141 (2d Cir.1989) (same).

In order to determine whether the CBA gave Ciambriello a property interest in the PMM–II position, we must examine two separate provisions: § 12–2, which governs promotions, and § 10–5, which governs demotions. If Ciambriello was properly promoted under § 12–2, and if § 10–5 provides that he could not be demoted except for just cause, then he had a property interest in the PMM–II position. *Cf. Moffitt*, 950 F.2d at 885.

Section 12–2 provides that, with respect to promotions in jobs such as Ciambriello's, "[a]bility, adaptability and seniority shall prevail insofar as practicable and consistent with the needs of the department. . . ." The defendants argue that Ciambriello had no property interest in the PMM–II position because he was promoted in violation of § 12–2. The District Court agreed with defendants' rationale, concluding that Ciambriello's property interest in his position was "necessarily limited by the seniority terms of the CBA." *Ciambriello v. County of Nassau*, 137 F.Supp.2d 216, 223 (E.D.N.Y.2001). Noting that Ciambriello could "claim no property right that contravenes the CBA," the District Court held, "Because the right sought to be protected here is a right finding no support in the CBA, it is not a right to which [Ciambriello] had a 'legitimate claim of entitlement' and therefore, not a property right upon which a Section 1983 claim can be sustained." *Id.*

Like the District Court, defendants rely primarily on *Apuzzo v. County of Ulster*, 98 A.D.2d 869, 470 N.Y.S.2d 814 (N.Y.App. Div.1983), *aff'd*, 62 N.Y.2d 960, 479 N.Y.S.2d 191, 468 N.E.2d 29 (1984). *Apuzzo*, however, does not compel the conclusion that Ciambriello lacked a property interest in the PMM–II position. The Court of Appeals in *Apuzzo* held only that, *if* an appointment violates a CBA's seniority provision, the appointment suffers from

"an irregularity of a substantial nature" within the meaning of New York Civil Service Law Section 50(4). *Apuzzo*, 479 N.Y.S.2d 191, 468 N.E.2d at 30. *Apuzzo* says nothing about *whether* Ciambriello's promotion violated § 12–2. While the Appellate Division noted in *Apuzzo* that "the collective bargaining agreement [there was] clear and unambiguous in limiting the county's discretion to appoint permanently or provisionally from an eligible list without regard to seniority," *Apuzzo*, 470 N.Y.S.2d at 816, the County CSEA CBA is neither clear nor unambiguous in that regard. The question of whether Ciambriello's promotion violated § 12–2 depends on more than his and other candidates' relative seniority. While less senior than other candidates, Ciambriello may have possessed superior "ability" or "adaptability," or it might not have been "practicable" or "consistent with the needs of the department" to promote someone other than Ciambriello. Of course, we need not—and cannot—conclude that Ciambriello did in fact possess superior ability or adaptability; rather, we hold only that these issues cannot be resolved on a motion to dismiss. The defendants may well prove that Ciambriello's promotion violated § 12–2, but they cannot do so on the current record. Thus, the District Court was premature in concluding that Ciambriello's interest in the PMM–II position finds no support in the CBA. *Ciambriello*, 137 F.Supp.2d at 223.

CSEA also argues that the New York state court judgment confirming the arbitrator's award, which concluded that the County had violated the CBA in promoting Ciambriello to the PMM–II position, is entitled to full faith and credit. This argument lacks merit. Under 28 U.S.C. § 1738, "judicial proceedings [of any court of any State] ... shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State...." The question, then, is whether the New York courts would afford preclusive effect to the state court confirmation proceeding in a subsequent § 1983 action. *See Fayer v. Town of Middlebury*, 258 F.3d 117, 125–26 (2d Cir.2001) (holding that Connecticut courts would not afford preclusive effect to state court judgment confirming arbitration award in subsequent § 1983 action).

■ In order to apply collateral estoppel under New York law, "it must be shown that the party against whom collateral estoppel is sought to be invoked had been afforded a full and fair opportunity to contest the decision said to be dispositive of the present controversy." *Gramatan Home Investors Corp. v. Lopez*, 46 N.Y.2d 481, 414 N.Y.S.2d 308, 386 N.E.2d 1328, 1331 (1979); *accord Continental Cas. Co. v. Rapid–Am. Corp.*, 80 N.Y.2d 640, 593 N.Y.S.2d 966, 609 N.E.2d 506, 510 (1993). Because it is undisputed that Ciambriello never received notice of or an opportunity to participate in either the arbitration or the state court confirmation proceeding, he was not afforded a full and fair opportunity to contest the prior decision. As a result, the New York courts would not give preclusive effect to the judgment confirming the arbitrator's award. *See, e.g., Lyons v. Med. Malpractice Ins. Ass'n*, 275 A.D.2d 396, 713 N.Y.S.2d 61, 62 (N.Y.App. Div.2000) (holding that appellants were not bound by verdict in previous action because they were not parties to that action). Thus, under 28 U.S.C. § 1738, we also must decline to give the state court judgment preclusive effect.

■ Next, we must determine whether CBA § 10–5 provides that Ciambriello could not be demoted except for just cause. Section 10–5 states in relevant part:

An employee who is entitled to the protections of this section shall, within 20

calendar days of the imposition of a penalty, be served with written notice of the discipline and charges of incompetence and/or misconduct. . . .

In stating that a covered employee upon whom a penalty is imposed "shall ... be served with ... charges of incompetence and/or misconduct," § 10–5 grants covered employees the substantive right not to be subjected to the disciplinary penalties identified in CBA § 10–6 absent incompetence or misconduct. Section 10–6 states that those disciplinary penalties include, *inter alia*, "demotion in grade and/or step." Under CBA § 10–1.1, employees are entitled to the protections of § 10–5 once they have served in a position for twenty-six weeks. At the time of his demotion Ciambriello was entitled to the protections of § 10–5 because he had served in the PMM–II position for more than two years, well in excess of the CBA's twenty-six-week trial period. Am. Compl. ¶¶ 16, 18.

The County nonetheless argues that Ciambriello had no property interest under § 10–5 because he was not "disciplined." Rather, the County argues, "he was removed from a promotional position pursuant to an arbitrator's award." We read the word "discipline" more broadly to include any dismissal or demotion, regardless of the County's stated reason for the adverse employment action. In other words, we read § 10–5 as creating a substantive right not to be dismissed or demoted (or subjected to any of the other disciplinary actions identified in § 10–6) except in the event of incompetence or misconduct.

The dissent would interpret the first sentence of § 10–5 to mean that, *if* discipline is based on charges of incompetence or misconduct, employees are entitled to

written notice of these charges, but that employees may be disciplined for other reasons without receiving charges of incompetence or misconduct. Dissenting Opinion, *infra*, at 327. The plain language of § 10–5, however, makes clear that charges of incompetence or misconduct must accompany all discipline under the CBA. Section 10–5 states that covered employees who are to be disciplined "*shall* ... be served with ... charges of incompetence and/or misconduct. . . ." The parties' use of the word "shall" "suggests a mandatory course of action," *Seabury Constr. Corp. v. Jeffrey Chain Corp.*, 289 F.3d 63, 68 (2d Cir.2002) (citing *United States v. Maria*, 186 F.3d 65, 70 (2d Cir. 1999)), and nothing in § 10–5 indicates that only certain employees shall be served with charges of incompetence or misconduct. The dissent's interpretation would also leave the County free to demote—or even dismiss—any employee at any time for any reason, as long as it simply refrained from claiming that the basis for the demotion or dismissal was incompetence or misconduct.[1] We believe it highly unlikely—indeed, inconceivable—that parties to a collective bargaining agreement would intend such a result. *See Bowen v. United States Postal Service*, 459 U.S. 212, 220, 103 S.Ct. 588, 74 L.Ed.2d 402 (1983) ("[A] collective-bargaining agreement is much more than traditional common-law employment terminable at will.")

We hold that "discipline" within the meaning of § 10–5 includes all the adverse employment actions listed in § 10–6, including "demotion in grade and/or step," regardless of the County's stated reason for the action. Therefore, Ciambriello has alleged a property interest in his promotion. *See Dwyer v. Regan*, 777 F.2d

---

1. Indeed, CSEA concedes that, if Ciambriello had been demoted because of incompetence or misconduct, he would have been entitled to notice and an opportunity to be heard.

825, 830–31 (2d Cir.1985) (holding that plaintiff had adequately alleged a property interest by alleging that he could not "be removed from his position except for incompetency or misconduct"). Like the plaintiff in *Dwyer*, Ciambriello has alleged that, under the CBA, he could "only be removed or subjected to other disciplinary penalties based on performance deficiencies such as incompetence and/or misconduct, shown after a hearing upon stated charges." Am. Compl. ¶ 21.

The CBA's Disciplinary Review Procedure, which describes the arbitration to which the dissent would relegate Ciambriello, also demonstrates that the CBA confers a right not to be disciplined except for incompetence or misconduct. The CBA provides that, when an employee challenges discipline through arbitration, "[t]he arbitrator shall only decide whether misconduct or incompetence existed, and if so, the appropriate penalty permitted by this Agreement." CBA § 10–9.5(f). Because the only permissible issues in a disciplinary arbitration are whether incompetence or misconduct existed, it naturally follows that the only permissible grounds for discipline are incompetence and misconduct.[2]

■ Finally, we must determine whether Ciambriello's right to continued employment at the higher grade—as distinct from his right to continued employment generally—rises to the level of a constitutionally protected property interest. This is a question of federal constitutional law, not state law. *Ezekwo*, 940 F.2d at 782. The answer is clear from our precedents, as well as from the decisions of other circuits. In *Ezekwo*, a physician alleged that her Fourteenth Amendment due process rights were violated by her hospital's failure to make her the chief resident. *Id.* Rejecting the defendants' argument that the physician's interest was too insubstantial to merit constitutional protection, we held that the physician's expectation of serving as chief resident "rose to the level of a property interest entitled to the protections afforded by the Due Process Clause." *Id.* at 782–83.

■ In determining whether a particular property interest rises to the level of constitutional protection, "a court must look to whether the interest involved would be protected under state law and must weigh 'the importance to the holder of the right.'" *Id.* at 783 (quoting *Brown v. Brienen*, 722 F.2d 360, 364 (7th Cir. 1983)). The court in *Ezekwo* found that the hospital's established practice of awarding the chief residency to all third year residents on a rotating basis, the hospital's assurance that the plaintiff would become chief resident, and the plaintiff's reasonable reliance on this course of conduct "created a contractual right that rose to the level of a significant property interest that would be protected under state law." *Id.* Next, the court found that, because the chief residency "denotes the culmination of years of study"

---

2. The dissent would also conclude, on the basis of *Goetz v. Windsor Cent. Sch. Dist.*, 698 F.2d 606 (2d Cir.1983), that "the fact that an employer may be required to notify an employee when he or she is disciplined for some reasons does not limit the employer to those reasons in imposing discipline." Dissenting Opinion, *infra*, at 327. As discussed above, however, § 10–5 does not merely require the County to "notify" employees who are disciplined "for some reasons"; rather, § 10–5 requires the County to "charge" all employees who are disciplined with "incompetence and/or misconduct." Regardless, *Goetz* does not compel the conclusion that the dissent would draw, as the collective bargaining agreement in *Goetz* simply required the school district to provide terminated employees with "reasons for such action," and did not require the district to charge such employees with incompetence or misconduct. *Goetz*, 698 F.2d at 609.

and "is necessary [sic] a position that an individual can occupy only once in his or her career," the interest at stake "was of significant professional value." *Id.*

Ciambriello's interest in the PMM–II position, even more clearly than the interest involved in *Ezekwo*, would be protected under state law. As discussed above, the interest derives from the CBA, a contract that is indisputedly valid under New York law. While Ciambriello's interest in the PMM II position may be of less value to him than the chief resident position was to Ezekwo—there is no allegation that his promotion was a once-in-a-lifetime opportunity—the interest is still significant. After working for the County for nearly five years, Ciambriello was promoted to a position that entailed higher pay and greater benefits. Ciambriello served in the higher position for well over two years, only to be returned to his original position and salary. We have no trouble concluding that this right was a property right of sufficient importance to Ciambriello to warrant constitutional protection. We hold, therefore, that Ciambriello's expectation of continued employment in the PMM–II position rises to the level of a constitutionally protected property interest.[3]

Accordingly, we join a number of other circuits that have concluded that the Fourteenth Amendment protects a property interest in a particular position or rank. *See Hennigh v. City of Shawnee,* 155 F.3d 1249, 1255 (10th Cir.1998) (holding that, as a result of collective bargaining agreement, "[p]laintiff had a legitimate property interest in his rank"); *Williams v. Commonwealth of Kentucky,* 24 F.3d 1526, 1538 (6th Cir.) (holding that, because plaintiff could not be demoted without cause, she had a protected property interest in her job), *cert. denied,* 513 U.S. 947, 115 S.Ct. 358, 130 L.Ed.2d 312 (1994); *Wheaton v. Webb–Petett,* 931 F.2d 613, 616–17 (9th Cir.1991) (holding that state employee had a constitutionally protected property interest in not being demoted); *Sowers v. City of Fort Wayne, Ind.,* 737 F.2d 622, 625 (7th Cir.1984) ("In conclusion, we hold that plaintiffs had property interests in their pre-demotion ranks of which they could be deprived only for cause and only in accordance with due process of law."); *Shawgo v. Spradlin,* 701 F.2d 470, 476 (5th Cir.1983) (holding that plaintiff had a constitutionally protected property interest in not being demoted); *see also Ross v. Clayton County, Ga.,* 173 F.3d 1305, 1308 (11th Cir.1999) (acknowledging that "a property interest in rank is at least theoretically

---

**3.** Our conclusion that Ciambriello had a protectible property interest in his grade is consistent with our decisions in two recent cases in which we found plaintiffs not to have alleged property interests in their promotions. In *Leventhal v. Knapek,* the plaintiff, an employee of the New York Department of Transportation, conceded that the grade 27 position from which he had been demoted was "a 'contingent permanent' position whose security depended upon" another employee's being promoted to a grade 29 position. 266 F.3d 64, 78 (2d Cir.2001). Accordingly, we held that the plaintiff's "demotion from a grade 27 to a grade 25 position was not offensive to the Due Process Clause of the Fourteenth Amendment." *Id.* at 77–78. Similarly, in *McMene-*

*my v. City of Rochester,* the plaintiff, a firefighter, alleged that his chief's promise to promote him created a property interest. 241 F.3d 279, 286 (2d Cir.2001). We held that "any alleged promise of promotion made by Chief Ippolito before there was an opening available to accommodate such a promotion did not strip the Chief of his discretion to choose another candidate once a position did become available." *Id.* Thus, in both *Leventhal* and *McMenemy,* the key fact was that the employer retained the discretion not to promote the plaintiff on a permanent basis, and neither case reached the question of whether the alleged property interest rose to the level of constitutional protection.

possible and a demotion could trigger procedural due process obligations even though the employee continues to work for the employer").

The plaintiffs in *Sowers*, for example, were Fort Wayne firefighters who were promoted after another group of firefighters had been demoted. *Sowers*, 737 F.2d at 623. The demoted firefighters sued the city, alleging that they had been improperly demoted. *Id.* The state courts agreed, and these firefighters were reinstated to their pre-demotion positions. *Id.* In order to avoid a duplication of personnel, the city demoted the plaintiffs to their pre-promotion positions without notice or an opportunity to be heard. *Id.* Plaintiffs sued, alleging that they had property interests in their promotions and that they had been demoted without due process of law. Like the defendants here, the defendants in *Sowers* argued that "one who is wrongfully promoted to a position has no legitimate claim of entitlement to it." *Id.* at 624. The Seventh Circuit disagreed. Relying on both a statute and an ordinance that protected firefighters from demotion except for cause, the Seventh Circuit held that "plaintiffs had property interests in their pre-demotion ranks of which they could be deprived only for cause and only in accordance with due process of law." *Id.* at 625.

### B. The Process Due

■ As we have determined that the Due Process Clause applies, "the question remains what process is due." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532,

541, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) (citation and internal quotation marks omitted). Unlike the existence of a property interest, which finds its origins in state law, " 'minimum [procedural] requirements [are] a matter of federal law....' " *Dwyer*, 777 F.2d at 830 (quoting *Vitek v. Jones*, 445 U.S. 480, 491, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980)). For this reason, defendants' argument that the CBA did not entitle Ciambriello to a pre-demotion hearing is unavailing.[4] The Constitution, not state law sources such as the CBA, determines what process is due. *Id.*

■ As an initial matter, we must determine what process the Constitution affords Ciambriello. While the Supreme Court has held that a tenured public employee is entitled to a hearing prior to being terminated, *Loudermill*, 470 U.S. at 542, 105 S.Ct. 1487, neither the Supreme Court nor this Court has held that the Constitution requires a hearing prior to demotion. The determination of whether one is entitled to a pre-deprivation hearing is fact-specific, as "due process is flexible and calls for such procedural protections as the particular situation demands." *Mathews v. Eldridge*, 424 U.S. 319, 334, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). In order to determine whether the Constitution requires a pre-demotion hearing under the circumstances of this case, we must balance three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of

---

**4.** The dissent contends that, because the CBA does not provide employees with the means of vindicating their right not to be terminated except for incompetence or misconduct, the drafters of the CBA must not have intended to confer such a right. Dissenting Opinion, *infra*, at 328. This contention ignores the distinction between whether the CBA conferred

a property right and, if so, whether the CBA provided adequate process. Indeed, cases are legion in which employers have conferred property rights in employment contracts or collective bargaining agreements without providing adequate procedures to vindicate those rights. *See, e.g., Ezekwo*, 940 F.2d at 783, 785–86; *Dobosz*, 892 F.2d at 1141.

additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Id.* at 335, 96 S.Ct. 893. While *Mathews* involved social security disability benefits, we apply the *Mathews* balancing test in the context of government employment. *See Ezekwo,* 940 F.2d at 783–84. We will examine each of the three factors in turn.

First, the relevant private interest is Ciambriello's interest in remaining employed at the PMM–II level—i.e., his interest in not being demoted. While this interest is undoubtedly less significant than a public employee's interest in not being dismissed altogether, the private interest involved here is still substantial. Ciambriello has alleged that, as a result of the demotion, he suffered a demotion in grade and a reduction in salary and benefits, among other things. Am. Compl. ¶ 20.

Second, the risk of an erroneous deprivation of Ciambriello's interest, through the procedures used, is high. By excluding Ciambriello from the proceedings that culminated in his demotion, the County and CSEA ensured that Ciambriello's interests were not represented in those proceedings. The grievance proceedings seem to have suffered as a result of Ciambriello's absence. For example, the arbitrator—despite concluding that Ciambriello's promotion violated § 12–2—does not seem to have considered the particular requirements of § 12–2, as the award makes no mention of Ciambriello's or any other candidate's "ability, adaptability, [or] seniority." Even more significantly, because Ciambriello was completely excluded from the proceedings that followed CSEA's grievance, he was unable to argue that the grievance was untimely, a fact that the County may have overlooked.[5]

Third, the governmental interest involved here is virtually nonexistent. There is no indication that Ciambriello was an unsatisfactory employee, such that the County could not wait to remove him from the PMM–II position. In addition, the fiscal and administrative burdens associated with a pre-demotion hearing would be minimal, as such a hearing "need not be elaborate." *Loudermill,* 470 U.S. at 545, 105 S.Ct. 1487. Indeed, the governmental interest in not providing a pre-demotion hearing is particularly minimal in this case because the County actually held a hearing prior to Ciambriello's demotion; it simply failed to invite Ciambriello's participation. The relevant governmental interest, then, is the County's interest in not notifying an employee of the pendency of a grievance that could cost him his job and not affording him the opportunity to be heard on this issue prior to demotion. This interest is minimal.

---

5. Under CBA § 23–1, a grievance must be initiated "within four (4) calendar months after the occurrence of the event grieved or within four (4) calendar months after the employee should have known of its occurrence." Here, the event grieved is Ciambriello's August 29, 1997 promotion. While there is no evidence in the record of when CSEA initiated its grievance, the arbitration hearing was not held until January 7, 1999, more than sixteen months after Ciambriello's promotion. This case, then, presents a real possibility that the grievance was untimely and that Ciambriello may have been erroneously deprived of his promotion. *See Wyandot, Inc. v. Local 227, United Food & Commercial Workers Union,* 205 F.3d 922, 929–30 (6th Cir.) (vacating arbitration award as a "depart[ure] from the essence of the [collective bargaining agreement]" because arbitrator ignored agreement's mandatory deadline for filing grievance), *cert. denied,* 531 U.S. 820, 121 S.Ct. 62, 148 L.Ed.2d 28 (2000). We express no position, however, as to whether the grievance was, in fact, untimely.

To the extent the *Mathews* balancing test requires us to weigh CSEA's interest rather than the County's—because CSEA initiated the process that culminated in Ciambriello's demotion—we conclude that CSEA's interest is also minimal. *See Connecticut v. Doehr*, 501 U.S. 1, 10–11, 111 S.Ct. 2105, 115 L.Ed.2d 1 (1991) (holding that, where government does not seek to effect deprivation on its own initiative, court must weigh interest of party seeking to effect deprivation). Because Ciambriello and Roeill are both CSEA members, CSEA has no particular interest in furthering the career of one at the expense of the other. While CSEA undoubtedly has an interest in ensuring that the County complies with the collectively bargained for seniority provision in making promotions, that interest was only hindered by excluding Ciambriello from the post-demotion hearing. As discussed above, Ciambriello's presence at the hearing could, most likely, have assisted the arbitrator in reaching the correct result. Thus, neither the County nor CSEA had an interest that outweighed Ciambriello's interest in maintaining his promotion.

The balance of these factors tips decidedly in favor of affording Ciambriello a pre-demotion hearing. We hold, therefore, that the process due Ciambriello was notice of the charges against him and the opportunity to be heard before demotion. As the Supreme Court stated in *Loudermill*, "We have described 'the root requirement' of the Due Process Clause as being 'that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest.'" *Id.* at 542, 105 S.Ct. 1487 (citations omitted) (emphasis in original); *see also Millemann v. Multnomah Educ. Serv. Dist.*, 168 F.3d 500, No. 97–35368, 97–35435, 1999 WL 50853, at *5 (9th Cir. Feb.3, 1999) (unpublished table decision); *Jirau–Bernal v. Agrait*, 37 F.3d 1, 5 (1st Cir.1994).

■ Our conclusion that the Constitution requires a pre-demotion hearing does not end the analysis. CSEA argues that even if Ciambriello would otherwise have a right to notice and an opportunity to be heard prior to being demoted, he waived that right (or, rather, his union waived it on his behalf) in the CBA.[6] We do not believe that the CBA effects a waiver of Ciambriello's constitutional rights. While *Romano v. Canuteson*, 11 F.3d 1140 (2d Cir.1993), suggests that unions may waive their members' Fourteenth Amendment rights in collective bargaining agreements, it is not clear that *Romano* in fact requires that conclusion, and we need not determine if it does.[7] Rather, we hold only that, even if unions are permitted to waive

---

**6.** CSEA relies on *Narumanchi v. Board of Trustees of the Connecticut State University*, 850 F.2d 70 (2d Cir.1988), and *Costello v. Town of Fairfield*, 811 F.2d 782 (2d Cir. 1987). CSEA's reliance is misplaced, as neither *Narumanchi* nor *Costello* involved a waiver of constitutional rights. In *Narumanchi*, we held that the pre-deprivation notice and hearing rights provided in the collective bargaining agreement were constitutionally sufficient. 850 F.2d at 72. In *Costello*, we held that the plaintiffs had failed to allege a property interest and we noted that, even if plaintiffs had alleged a property interest, the collective bargaining agreement's post-deprivation remedies would have been adequate. 811 F.2d at 784–85. The fact that collective

bargaining agreements might, in some circumstances, provide all the process that the union members are due obviously does not compel the conclusion that the CBA at issue here provided all the process that Ciambriello was due.

**7.** We note that *Romano* is not necessarily controlling, as that case was decided on qualified immunity and state law grounds. 11 F.3d at 1141–42. The distinction between state and federal law is significant because the issue of what process is due under the Fourteenth Amendment is strictly a matter of federal, not state, law. *Loudermill*, 470 U.S. at 541, 105 S.Ct. 1487; *Vitek*, 445 U.S. at 491, 100 S.Ct. 1254. The waiver discussion in

their members' Fourteenth Amendment rights, the CBA at issue here fails to do so. CSEA cites CBA §§ 23–2 and 23–3 for its contention that "the CBA's grievance procedure waived Ciambriello's asserted right to be given notice of the pendency of a grievance or an opportunity to be heard with respect to the grievance."[8] Sections 23–2 and 23–3, however, do not even purport to waive any Fourteenth Amendment rights. To the extent CSEA argues that § 23–2(d) waived Ciambriello's right to pursue a § 1983 claim in federal court, as opposed to in an arbitration proceeding, the provision would not be enforceable. *See Rogers v. New York University,* 220 F.3d 73, 75 (2d Cir.) ("The arbitration provision in the instant case, by which employees purport to waive their right to a federal forum with respect to statutory claims, is contained in a union-negotiated CBA.... [S]uch provisions are not enforceable."), *cert. denied,* 531 U.S. 1036, 121 S.Ct. 626, 148 L.Ed.2d 535 (2000).

 Nor does any other provision of the CBA purport to waive the union mem-

bers' constitutional rights. Section 10–1, for example, provides that the CBA's disciplinary procedures "shall be in lieu of any and all other statutory or regulatory disciplinary procedures," without mentioning constitutional rights. A public employee's right to a pre-deprivation hearing derives from the Fourteenth Amendment, not from any statute or regulation. *See Loudermill,* 470 U.S. at 541, 105 S.Ct. 1487 ("The right to due process is conferred, not by legislative grace, but by constitutional guarantee.") (citations and internal quotation marks omitted). Because defendants have not pointed to any provision of the CBA that even purports to waive Ciambriello's Fourteenth Amendment right to a pre-demotion hearing, we find that he has not waived that right. *See Fuentes v. Shevin,* 407 U.S. 67, 95, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972) ("For a waiver of constitutional rights in any context must, at the very least, be clear."); *see also Chaney v. Suburban Bus Div. of the Reg'l Transp. Auth.,* 52 F.3d 623, 629–30 (7th Cir.1995) (holding that collective bargaining agree-

---

*Morris v. Lindau,* 196 F.3d 102 (2d Cir.1999), is similarly ambiguous. Citing *Romano,* the court found that the plaintiff's union had waived the procedural protections of New York Civil Service Law § 75 and noted that "Morris does not challenge the validity of this waiver." *Morris,* 196 F.3d at 115. Like the *Romano* court, however, the *Morris* court did not state that Morris's union had waived its members' *constitutional* rights.

8. Section 23–2 provides:

(a) The parties agree that each shall exercise its best efforts to ensure the prompt scheduling and disposition of contract grievances.
(b) Failure by the County, at any step of the procedure provided herein, to communicate a decision on a grievance within the specified time limits shall permit the employee to proceed to the next step;
(c) Failure by the employee or Union at any step of this procedure to appeal a grievance

to the next step within the specified time limits shall be deemed to be a waiver of the right to appeal to the next step;
(d) Unless there is no adequate remedy at law available, neither the Union nor the grievant will initiate any action in any court which is related to any matter which is within the definition of a grievance under this Agreement, until and unless such grievance has timely proceeded through each step hereinabove set forth, and has been finally determined at Step 5.
Section 23–3 provides:
Conference and hearings held under the procedure provided herein shall be conducted at times and places which will afford a fair and reasonable opportunity for all persons entitled to be present at such conferences or hearings. When such conferences or hearings are held during working hours, all individuals necessary for the conferences or hearings will be excused without loss of pay for the purpose of attending such conferences or hearings.

ment is not sufficiently explicit to effect a waiver of union members' right to pre-termination procedures).

 Finally, Ciambriello's failure to take advantage of the CBA's grievance procedures is irrelevant. In *Goetz v. Windsor Cent. Sch. Dist.* we held that, if the plaintiff was deprived of a liberty interest, "he may well be entitled to more due process than the procedure under the collective bargaining agreement afforded him. Failure to take advantage of that procedure may not, therefore, be interpreted as a waiver of the full due process to which he would be entitled." 698 F.2d 606, 610 (2d Cir.1983); *see also Costello,* 811 F.2d at 785 (Van Graafeiland, J., concurring) (stating that "a municipal employee is not required to pursue collectively-bargained-for grievance procedures before filing suit under section 1983 to challenge the constitutional sufficiency of those grievance procedures"). Even more clearly than in *Goetz,* if Ciambriello was deprived of a property interest, then he *was* entitled to more due process than the CBA afforded him. The Seventh Circuit reached the same conclusion in a case involving a public employee's termination. There the court held that "due process requires pre-termination notice and an opportunity to respond even where a CBA provides for post-termination procedures that fully compensate wrongfully terminated employees." *Chaney,* 52 F.3d at 629. Our conclusion, *supra,* that the post-deprivation grievance procedures outlined in the CBA are constitutionally inadequate distinguishes this case from cases such as *New York State National Organization For Women v. Pataki,* where we held that "a procedural due process violation cannot have occurred when the governmental actor provides *apparently adequate* procedural remedies and the plaintiff has not availed himself of those remedies." 261

F.3d 156, 169 (2d Cir.2001) (citing *Alvin v. Suzuki,* 227 F.3d 107, 116 (3d Cir.2000)) (emphasis added), *cert. denied,* —— U.S. ——, 122 S.Ct. 1066, 151 L.Ed.2d 969 (2002).

In summary, the Fourteenth Amendment granted Ciambriello the right to notice and an opportunity to be heard prior to his demotion, the County failed to provide such notice or opportunity, and Ciambriello did not waive this right in the CBA. Therefore, Ciambriello has sufficiently alleged a § 1983 claim against the County and the individual defendants for violation of his Fourteenth Amendment right to procedural due process.

## II. State Action

 In order to state a claim under § 1983, a plaintiff must allege that he was injured by either a state actor or a private party acting under color of state law. *Spear v. Town of West Hartford,* 954 F.2d 63, 68 (2d Cir.1992). "Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes 'state action.'" *United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.,* 941 F.2d 1292, 1295–96 (2d Cir.1991) (citing *Blum v. Yaretsky,* 457 U.S. 991, 1002, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982)). CSEA argues that it is not a state actor and that Ciambriello has failed to allege that it acted under color of state law. Labor unions such as CSEA generally are not state actors, and Ciambriello does not argue otherwise. *See, e.g., McGovern v. Local 456, Int'l Bhd. of Teamsters, Chauffeurs & Warehousemen & Helpers of Am.,* 107 F.Supp.2d 311, 316 (S.D.N.Y.2000). Rather, Ciambriello argues that CSEA acted under color of state law by conspiring with the County. Ciam-

briello's conspiracy allegations consist entirely of the following:

> On information and belief, CSEA, Inc., the County, Rinchiuso, and Cotugno agreed that CSEA, Inc. could prosecute aforesaid grievances to arbitration without giving notice to Ciambriello or giving Ciambriello an opportunity to participate at any stage of those proceedings, and the County, Rinchiuso and Cotugno agreed with CSEA, Inc. to defend same, without giving notice to Ciambriello or giving Ciambriello an opportunity to participate at any stage of those proceedings.

Am. Compl. ¶ 40. CSEA argues that Ciambriello's allegations are merely conclusory and lack the specificity required to state a § 1983 claim against a private party.

■■■■ We agree with CSEA that Ciambriello's conclusory allegations are insufficient to state a § 1983 claim against it. "To state a claim against a private entity on a section 1983 conspiracy theory, the complaint must allege facts demonstrating that the private entity acted in concert with the state actor to commit an unconstitutional act." *Spear*, 954 F.2d at 68. Put differently, a private actor acts under color of state law when the private actor "is a willful participant in joint activity with the State or its agents." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) (quoting *United States v. Price*, 383 U.S. 787, 794, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966)). A merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity. *Spear*, 954 F.2d at 68. Absent from Ciambriello's complaint are any factual allegations suggesting that CSEA conspired with the County. *Cf. Hughes v. Patrolmen's Benevolent Ass'n of the City of N.Y., Inc.*, 850 F.2d 876, 880–81 (2d Cir.1988) (holding that complaint alleged sufficient facts to support conclusion that private-actor PBA had acted under color of state law, where complaint alleged, *inter alia*, that PBA had hired private investigators and placed plaintiff under surveillance with knowledge and consent of state-actor New York City Police Department).

We note that Ciambriello's conclusory allegations of conspiracy ring especially hollow in light of the adversarial relationship between the County and CSEA. Indeed, the very proceeding in which Ciambriello alleges that CSEA conspired with the County—the arbitration—placed CSEA and the County in adversarial positions, as CSEA was representing County employees in a grievance against the County. *See McGovern*, 107 F.Supp.2d at 317 (noting that "the Union here represents county employees, and thus must be considered to be an adversary of the county government").

Because CSEA is not a state actor, and Ciambriello has not alleged sufficient facts to support the conclusion that it acted under color of state law, Ciambriello's § 1983 claims against CSEA must be dismissed. On remand, we leave to the sound discretion of the District Court whether to permit Ciambriello to replead his § 1983 claims against CSEA.

### III. § 1983 Conspiracy Claim

■■■■ Defendants also argue that the allegations of Ciambriello's complaint are insufficient to support a § 1983 conspiracy claim against any of the defendants. The analysis of this issue is very similar to the analysis performed in section II, *supra*. In order to survive a motion to dismiss on his § 1983 conspiracy claim, Ciambriello must allege (1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional in-

jury; and (3) an overt act done in further-ance of that goal causing damages. *Pang-burn v. Culbertson*, 200 F.3d 65, 72 (2d Cir.1999). In addition, "complaints con-taining only conclusory, vague, or general allegations that the defendants have en-gaged in a conspiracy to deprive the plain-tiff of his constitutional rights are properly dismissed; diffuse and expansive allega-tions are insufficient, unless amplified by specific instances of misconduct." *Dwares v. City of N.Y.*, 985 F.2d 94, 100 (2d Cir. 1993) (citations, internal quotation marks, and internal alterations omitted).

As discussed in section II, *supra*, Ciambriello's conspiracy allegations are strictly conclusory. Ciambriello has not provided any "details of time and place," *Dwares*, 985 F.2d at 100, and he has "fail[ed] to specify in detail the factual basis necessary to enable [defendants] in-telligently to prepare their defense," *Ostr-er v. Aronwald*, 567 F.2d 551, 553 (2d Cir.1977). Because Ciambriello's factual allegations are inadequate, his § 1983 con-spiracy claim must be dismissed. On re-mand, we leave to the sound discretion of the District Court whether to permit Ci-ambriello to replead his conspiracy claim.

### IV. State Law Claims

Because the District Court dis-missed all of Ciambriello's § 1983 claims, it declined to exercise supplemental juris-diction over his state law claims, dismiss-ing them without prejudice. *Ciambriello v. County of Nassau*, 137 F.Supp.2d 216, 223 (E.D.N.Y.2001); *see also* 28 U.S.C. § 1367(c)(3) (1994). As we have reinstated Ciambriello's § 1983 claim against the County and the individual defendants, however, we also reinstate Ciambriello's state law claims. All of Ciambriello's claims relate to his demotion and the pro-cedures the County and CSEA em-ployed—or did not employ—in effecting his demotion. 28 U.S.C. § 1367(a). The state law claims therefore "form part of the same case or controversy" as the § 1983 claims. Although we have dis-missed both § 1983 claims against CSEA, the state law claims against CSEA should nonetheless survive, as "supplemental jur-isdiction shall include claims that involve the joinder or intervention of additional parties." *Id.*

### CONCLUSION

For these reasons, we affirm the dis-missal of the § 1983 claim against CSEA; vacate the dismissal of the § 1983 claim against the County, Rinchiuso and Cotug-no; affirm the dismissal of the § 1983 conspiracy claim against all defendants; vacate the dismissal of the state law claims against all defendants; and remand to the District Court.

SACK, Circuit Judge, concurring in part and dissenting in part:

I agree with the majority's resolution of this appeal with respect to the plaintiff Daniel Ciambriello's conspiracy claim and his claims against the Civil Service Em-ployees Association, Inc., and therefore join Parts II and III of the majority opin-ion. I respectfully dissent, however, from the majority's conclusion that Ciambriello has a property interest in his employment protected by the Due Process Clause of the Fourteenth Amendment.

The majority's view that the plaintiff has such a property interest rests on § 10–5 of the collective bargaining agreement cover-ing Ciambriello's employment (the "CBA"). Majority opinion, ante at 315–16. Section 10–5 reads in its entirety:

> Notice of Discipline and Charges. An employee who is entitled to the protec-tions of this section *shall, within 20 calendar days of the imposition of a*

*penalty, be served with written notice of the discipline and charges of incompetence and/or misconduct* either in person or by certified mail, return receipt requested, to the employee's current address as it appears on the County's personnel records. *If the employee wishes to contest said discipline, the employee must proceed in accordance with the Disciplinary Review Procedure* set forth in this section. A copy of such notice and charges shall simultaneously be served upon the Union.

CBA § 10–5 (emphases added).[1] My disagreement with the majority rests on its conclusion that "[i]n stating that a covered employee upon whom a penalty is imposed 'shall ... be served with ... charges of incompetence and/or misconduct,' § 10–5 grants covered employees the substantive right not to be subjected to the disciplinary penalties identified in CBA's § 10–6 absent incompetence or misconduct." Majority opinion, ante at 316.

"[A] person may possess a protected interest in public employment if contractual or statutory provisions guarantee continued employment absent 'sufficient cause'...." *Abramson v. Pataki,* 278 F.3d 93, 99 (2d Cir.2002). The CBA does not expressly confer a property interest through an explicit "sufficient cause" or "just cause" provision. *Cf., e.g., id.,* at 100 ("[T]he plain language of the recognition agreement shows that it does not create any sort of a property interest in employment... because the [employer's] discretion to hire or fire an employer was unlim-

ited."); *Leary v. Daeschner,* 228 F.3d 729, 742 (6th Cir.2000) (finding a property interest where employees could only be dismissed "for cause"); *Hennigh v. City of Shawnee,* 155 F.3d 1249, 1255 (6th Cir. 1998) (finding a property interest in a clause guaranteeing continued employment "except on a showing of 'good cause' and 'extenuating circumstances'") (emphasis omitted); *Dill v. City of Edmond,* 155 F.3d 1193, 1206 (10th Cir.1998) (holding that a "for cause" provision in a collective bargaining agreement created a protected property interest); *Int'l Union, United Auto., Aerospace & Agric. Workers of Am., Local 737 v. Auto Glass Employees Fed. Credit Union,* 72 F.3d 1243, 1251 (6th Cir.) (finding no property interest where "no provision [of the contract] explicitly promised that the [employer] would not discharge its employees without cause"), *cert. denied,* 519 U.S. 814, 117 S.Ct. 63, 136 L.Ed.2d 24 (1996); *Sanguigni v. Pittsburgh Bd. of Pub. Educ.,* 968 F.2d 393, 401 (3d Cir.1992) (concluding that "only two types of contracts" create protected property interests, those that confer "a protected status" and those comprising "for cause" provisions); *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir.1991) (finding a property interest based on a "just cause" provision). In Ciambriello's case, "no provision [of the CBA] explicitly promised that the [employer] would not discharge its employees without cause" in the manner of the aforementioned cases. *Int'l Union,* 72 F.3d at 1251 (emphasis added).

---

1. The Disciplinary Review Procedure referred to in § 10–5 has three steps. First, an employee presents an "objection in writing to the employee's department head...." CBA § 10–8.1 Second, the employee presents the matter to the Office of Labor Relations. *Id.* § 10–8.2 Finally, arbitration may be initiated-but only by the union-either after completion of the first two steps, or immediately upon

discipline if the employee is subject to discharge or an unpaid suspension of more than thirty days. *Id.* § 10–8.3. The arbitrators, though empowered to make final and binding decisions, cannot "add to, subtract from, modify or change" the CBA, *id.* § 10–9.4, and can "only decide whether misconduct or incompetence existed," *id.* § 10–9.5(d).

Unlike the majority, I also cannot find in the clearly procedural provisions of § 10–5 an implicit restriction of the grounds upon which employees may be disciplined. The majority "read[s] § 10–5 as creating a substantive interest not to be dismissed or demoted ... except in the event of incompetence or misconduct," majority opinion, ante at 316, from the fact that Ciambriello must be notified of both "the discipline"— the adverse employment action, as enumerated in § 10–6 [2]—*and* the "charges of incompetence and/or misconduct." This first sentence of § 10–5 seems to me to admit of at least two readings: (1) that if discipline is based on charges of incompetence or misconduct, employees are entitled to written notice of these charges; or (2) that discipline must always be accompanied by charges of incompetence or misconduct. The majority settles on the second interpretation through two inferences. It first observes that notice must accompany all discipline, and then infers that notice of charges of misconduct or incompetence must also accompany all discipline. Majority opinion, ante at 316. Second, from the inference that notice of charges of misconduct or incompetence must accompany discipline, the majority concludes that discipline must always be accompanied by "charges of incompetence and/or misconduct." Hence, the majority finds that Ciambriello's employer, Nassau County, can only demote or terminate employees for misconduct or incompetence.

I find the majority's reconstruction of this phrase unpersuasive. As an initial matter, the first sentence of § 10–5 explic-

itly mandates one thing: written notice. We have disapproved of an inference of substantive restrictions on disciplinary grounds from a notice provision. In *Goetz v. Windsor Cent. Sch. Dist.*, 698 F.2d 606, 609 (2d Cir.1983), we held that "[t]he mere fact that an employer may be required to notify an employee of the reasons for discharge does not alter the employee's status" as an at-will employee. *A fortiori*, the fact that an employer may be required to notify an employee when he or she is disciplined for some reasons does not limit the employer to those reasons in imposing discipline.[3]

The context in which § 10–5 is found seems to me to reenforce this view. The first sentence of § 10–5 identifies only the procedure the employer must *follow* to impose "discipline." Employees receive written notice "of the discipline and charges of incompetence and/or misconduct" within twenty days of the imposition of discipline. Section 10–5 does not state that "incompetence and/or misconduct" are the sole grounds for discipline. Also absent is any statement that "charges of incompetence and/or misconduct" are a precondition for discipline. The second sentence of the section adds that an employee wishing to contest discipline "must proceed in accordance with the Disciplinary Review Procedure" specified in the CBA. *See* CBA §§ 10–8 & 23. Together, the first two sentences of § 10–5 articulate a procedural framework, not grounds, for "discipline."

---

**2.** "Discipline" is used in § 10–6 broadly to include adverse employment actions without reference to the reasons for the action.

**3.** Federal courts have typically been reluctant to read procedural provisions as creating substantive property interests. "Procedural detail in a statute or regulation, standing alone, is not sufficient to establish a protected prop-

erty interest in an employment benefit." *Hennigh*, 155 F.3d at 1254; *accord Int'l Union*, 72 F.3d at 1251 (finding no property interest in "provisions that gave employees the right to have their complaints heard in a grievance procedure and the right to discuss their discharge with the Union").

Section 10–5, moreover, is entitled *"Notice* of Discipline and Charges," and contained in a section with the heading "Disciplinary *Procedures."* (emphases added). Other provisions of § 10 describe procedural norms, not conditions or guarantees of continued employment. Section 10–3.1, for instance, provides employees with "a reasonable opportunity to consult with a union representative" before being required to resign. Thus, the entirety of § 10 provides procedural, not substantive, protection for employees.

Finally, the meaning of § 10–5 is clarified by the content of the "Disciplinary Review Procedure" to which it refers. Employees governed by the CBA do not have an absolute right to an arbitral hearing: Under § 10–8.3, "only the Union may proceed to Disciplinary Arbitration." If the drafters of the CBA intended to place a restriction on the reasons for which the County can discipline employees, it is difficult to see why they would in the very same provision eliminate the mechanism to implement this right. To be sure, a state actor cannot give with one hand a protected property interest, and eliminate with the other hand the procedure that must accompany this property interest. *See Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 541, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) (noting that a legislature "may not constitutionally authorize the deprivation of [a protected property] interest, once conferred, without appropriate procedural safeguards") (internal citations and punctuation omitted). In this instance, however, the fact that the CBA does not grant employees a hearing to vindicate their property right after discipline seems to me to demonstrate that there was never an intention on the part of the CBA's drafters to "confer[ ]" such a property right. *Id.* If § 10–5 was intended to place a substantive restriction on the grounds for which an employee could be disciplined,

the CBA would not have deliberately omitted any means for an employee to enforce that restriction.

Section 10–5 of the CBA, in my view, furnishes only procedural protection to employees, makes arbitration's availability dependent on the union, and does not create substantive rights. I would therefore affirm the district court's decision that Ciambriello has no property interest in his employment.