323 F.3d 206
 Anne E. HARHAY, Plaintiff-Appellee,
v.
TOWN OF ELLINGTON BOARD OF EDUCATION, Richard E. Packman, Maurice W. Blanchette, William R. Harford, Gary J. Blanchette, Cynthia A. Heidari, Donald Weekes, Kenneth J. Brennan, Susan J. Luginbuhl, John O'Shaugnessy, Wendy J. Ciparelli, and Richard Currey, Defendants-Appellants.
 Docket No. 01-9173.
 United States Court of Appeals, Second Circuit.
 Argued May 30, 2002.
 Decided March 21, 2003.
 
 COPYRIGHT MATERIAL OMITTED Michael J. Rose, Howd & Ludorf, Hartford, CT (John J. Radshaw, III and Thomas R. Gerarde, on the brief), for Defendants-Appellants.
 Noah H. Starkey, Noah H. Starkey, Esq., Hartford, CT, for Plaintiff-Appellee.
 Before: STRAUB, SOTOMAYOR, Circuit Judges, and GOLDBERG,* Judge.
 GOLDBERG, Judge.
 
 
 1
 Plaintiff Anne E. Harhay brought an action against defendants Town of Ellington Board of Education (the "Board"), Superintendent Richard E. Packman, and the individual members of the Board (the "Board members") in the United States District Court for the District of Connecticut (Thompson, J.). The action arises from the Board's refusal to accept the resignation of another teacher and rehire Harhay to fill the resulting vacancy. Harhay alleged a violation of her right to due process pursuant to 42 U.S.C. § 1983, as well as breach of contract and intentional infliction of emotional distress. Defendants moved for summary judgment based on plaintiff's failure to exhaust administrative remedies, plaintiff's failure to state a cause of action, and defendants' legislative and qualified immunity as to plaintiff's due process claim. The district court denied the motion with respect to legislative and qualified immunity on August 28, 2001. Plaintiff's claim of intentional infliction of emotional distress was dismissed by the district court; her breach of contract claim remains pending against all defendants.
 
 
 2
 On appeal, we consider the following two legal issues: (1) whether the actions of the Board members allegedly denying plaintiff an opportunity to be reappointed were legislative in nature so as to qualify for legislative immunity; and (2) whether Packman and the Board members are entitled to freedom from suit for acts undertaken in their official capacity under the doctrine of qualified immunity.
 
 
 3
 For the reasons stated herein, we affirm the district court's denial of the Board members' legislative immunity, but reverse in part the district court's denial of Packman and the Board members' qualified immunity. This case is remanded to the district court with instructions to enter judgment for Packman and the Board members on plaintiff's due process claim.
 
 BACKGROUND
 
 4
 Plaintiff Anne E. Harhay was employed as an elementary school art teacher by the Board from September 1981 through March 1994. Throughout this time, Harhay's employment was governed by a Collective Bargaining Agreement ("CBA") between the Board and her labor union, the Ellington Education Association. As part of a budgetary cutback, the Board voted on March 16, 1994 to terminate plaintiff's employment effective the following day, March 17, 1994. Plaintiff initiated arbitration by filing a grievance that was eventually rejected by the Connecticut Appellate Court.
 
 
 5
 At the time Harhay's employment was terminated, she was a tenured teacher under the authority of Connecticut General Statute § 10-151. As a tenured teacher, plaintiff could only be dismissed because of the elimination of her position if there was no other position for which she was qualified. There was no such vacancy on the date of her termination. As provided for in the CBA governing her contract, Harhay exercised her right to reappointment, which entailed being placed on a "reappointment list" for up to three years upon the date of her termination. While on the reappointment list, Harhay was entitled to be appointed to any position that became vacant for which she was qualified. Her name remained on the list for the maximum three years, until March 17, 1997.
 
 
 6
 On September 25, 1996, Norton Berkowitz, an Ellington art teacher, notified Packman in writing of his intent to retire effective February 1, 1997. The Board deemed Berkowitz's mid-year retirement a breach of contract, and tabled his request at a meeting on November 13, 1996, and several times thereafter. At the request of the State of Connecticut Teachers' Retirement Board, the Board and Packman completed a retirement form on January 3, 1997. It is not apparent from the record whether this form was ever submitted to the Retirement Board or otherwise was officially filed. Berkowitz ceased teaching in the Ellington public school system on February 1, 1997. His request was eventually approved by the Board, but with the effective date of his retirement designated as July 1, 1997.
 
 
 7
 In two separate letters dated November 21, 1996 and December 3, 1996, Harhay notified Packman of her desire to be appointed to the position being vacated by Berkowitz. On December 3, 1996, Packman informed Harhay by letter that the Board did not consider Berkowitz's early retirement valid and that therefore there was no vacancy. A "long-term substitute" teacher was hired to replace Berkowitz on February 1, 1997. Plaintiff remained on the reappointment list until March 17, 1997, but was never rehired to fill the vacancy.
 
 
 8
 Harhay filed two separate grievances, a Level II grievance and a Level III grievance, pursuant to the CBA. Through her union, she contested the Board's decision not to reappoint her to fill the vacancy resulting from Berkowitz's departure. In response to each grievance, Packman and the Board members responded by contending that no vacancy existed for an art teacher and therefore the Board was not obligated to reappoint her. Following the Board's denials of Harhay's grievances at two initial levels, only the union could seek arbitration under the terms of the CBA, which it did by filing a Level IV grievance on March 3, 1997. The union withdrew its demand for arbitration on March 18, 1997.
 
 
 9
 On January 29, 2000, Harhay filed suit in Connecticut State Court, claiming that the Board's refusal to allow Berkowitz to retire as of February 1, 1997 was part of a deliberate and concerted effort by the Board and the individual Board members to deny Harhay her right to be appointed to the vacant position left by Berkowitz. The action was removed to the U.S. District Court for the District of Connecticut. Defendants moved for summary judgment based on plaintiff's failure to state a cause of action, plaintiff's failure to exhaust administrative remedies, and defendants' legislative and qualified immunity. On August 28, 2001, the district court granted in part and denied in part the motion for summary judgment. The court found that plaintiff's allegations of intentional infliction of emotional distress failed to state a claim upon which relief could be granted, and granted defendants' motion for summary judgment on that count. The court ruled that plaintiff had not failed to exhaust her administrative remedies as set forth in the CBA, and denied summary judgment for breach of contract. The court found the Board members' conduct regarding Harhay's employment to be administrative in nature, and therefore ruled that absolute legislative immunity for the Board members did not apply. Lastly, the court decided that Packman and the Board members were not entitled to qualified immunity on Harhay's Section 1983 claim. In arriving at this conclusion, the court found that Harhay had a contractual right to be appointed to any vacancy for which she is qualified. Addressing the issue of qualified immunity, the court stated that a tenured public employee has a constitutionally protected property interest in his or her job of which he or she cannot be deprived without due process, but did not explicitly hold that plaintiff's contractual right to reappointment constituted a property interest under the Due Process Clause. Defendants have taken an interlocutory appeal of the district court's decision denying summary judgment on the basis of defendants' legislative and qualified immunity.
 
 DISCUSSION
 
 10
 Defendants argue that their actions with respect to plaintiff's employment status are protected by the doctrines of legislative immunity and qualified immunity. We consider these claims individually.
 
 
 11
 This court has jurisdiction to consider the district court's denial of a claim of absolute and qualified immunity as an appealable final decision under 28 U.S.C. § 1291 to the extent that it turns on a matter of law. Mitchell v. Forsyth, 472 U.S. 511, 530, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) ("An appellate court reviewing the denial of ... immunity need not consider the correctness of the plaintiff's version of the facts, nor even determine whether the plaintiff's allegations actually state a claim. All it need determine is a question of law...." Id. at 528, 105 S.Ct. 2806.). We review de novo the district court's denial of summary judgment on qualified immunity grounds. Martinez v. Simonetti, 202 F.3d 625, 631 (2d Cir. 2000).
 
 I. Legislative Immunity
 
 12
 Legislators are entitled to absolute immunity from civil liability for their legislative activities. This Circuit has previously held that absolute legislative immunity for Section 1983 actions extends to local legislators. See e.g., Carlos v. Santos, 123 F.3d 61, 66 (2d Cir.1997). We consider whether the purported actions of the Board members are protected by the doctrine of legislative immunity.
 
 
 13
 The test for determining whether an act is legislative "turns on the nature of the act, rather than on the motive or intent of the official performing it." Bogan v. Scott-Harris, 523 U.S. 44, 54, 118 S.Ct. 966, 140 L.Ed.2d 79 (1998). Under this functional test, immunity depends on the nature of the act itself, not the identity of the actor performing it. See Forrester v. White, 484 U.S. 219, 224, 227, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988).
 
 
 14
 The first step in our inquiry is whether the Board members' actions were legislative in function. In order for legislative immunity to attach, the act in question must be taken "in the sphere of legitimate legislative activity." Bogan, 523 U.S. at 54, 118 S.Ct. 966 (quoting Tenney v. Brandhove, 341 U.S. 367, 376, 71 S.Ct. 783, 95 L.Ed. 1019 (1951)). Discretionary personnel decisions, even if undertaken by public officials who otherwise are entitled to immunity, do not give rise to immunity because such decisionmaking is no different in substance from that which is enjoyed by other actors. See Forrester, 484 U.S. at 229-30, 108 S.Ct. 538. In so holding, we do not mean to suggest that decisions regarding the elimination of a class of jobs for budgetary or policy reasons would not be legislative in nature simply because they relate to employment. Cf. Rini v. Zwirn, 886 F.Supp. 270, 282-83 (E.D.N.Y. 1995) (board members who voted to eliminate a class of jobs due to budgetary concerns were protected by legislative immunity). To reiterate, it is the nature of the act that we examine to determine whether legislative immunity applies.
 
 
 15
 Here it is apparent that the Board members' actions with respect to Harhay's employment were administrative, not legislative, in nature. The Board did not engage in the kind of broad, prospective policymaking that is characteristic of legislative action. Instead, the Board "tabled" Berkowitz's resignation, a decision that was only directed to his situation and did not implicate any Board policy. We find unpersuasive the argument advanced by defendants that the fact that the employment decision here was made by a "vote" of the Board to "table" Berkowitz's resignation somehow alters the otherwise administrative nature of their actions. The Board members are not entitled to absolute legislative immunity because their acts were not quintessentially legislative, but rather were part of a process by which an employment situation regarding a single individual was resolved.
 
 
 16
 Defendants also argue that the district court improperly speculated as to the subjective motivations of the individual Board members. We do not find this assertion persuasive. The district court noted Harhay's allegation that the Board's refusal to accept Berkowitz's resignation was motivated by a desire to prevent rehiring her. This observation, however, is not dispositive. The fact remains that the Board members did not act in any legislative capacity when they dealt with Berkowitz's resignation, thus precluding legislative immunity for those acts. We affirm the district court decision with respect to legislative immunity.
 
 II. Qualified Immunity
 
 17
 Packman and the Board members argue that they are protected from suit by the doctrine of qualified immunity. Public officials enjoy qualified immunity from suit for damages under 42 U.S.C. § 1983 for acts undertaken in their official capacity, unless their conduct violates clearly established constitutional rights of which an objectively reasonable official would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).
 
 
 18
 Our analysis of a qualified immunity claim consists of a three step inquiry. See Wilson v. Layne, 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999); X-Men Sec., Inc. v. Pataki, 196 F.3d 56, 65-66 (2d Cir.1999). First, we must determine whether plaintiff has alleged a violation of a constitutional right. Then we consider if the violated right was clearly established at the time of the conduct. See Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). Finally, if plaintiff had a clearly established, constitutionally protected right that was violated by the actions of the Board, he or she must demonstrate that defendants' actions were not objectively reasonable. X-Men, 196 F.3d at 66. This three step inquiry should typically be done in sequential order. Cty. of Sacramento v. Lewis, 523 U.S. 833, 842, n. 5, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998). Defendants may benefit from qualified immunity if plaintiff is unable to establish any of these three steps. See X-Men, 196 F.3d at 65-66 ("These three issues should be approached in sequence, for if the second is resolved favorably to the official, the third becomes moot; a favorable resolution of the first moots both the second and the third."). Thus, if there is no deprivation of a constitutional right alleged by Harhay (the first step), there is no need for the court to decide if the right was clearly established at the time the Board acted on Harhay's rehiring (the second step). See Saucier, 533 U.S. at 201, 121 S.Ct. 2151 ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.").
 
 
 19
 The first step in our qualified immunity inquiry is to ascertain whether a constitutional right would have been violated were Harhay's allegations established. Johnson v. Newburgh Enlarged Sch. Dist., 239 F.3d 246, 250 (2d Cir.2001). In reviewing Harhay's Section 1983 claim, the Fourteenth Amendment's Due Process Clause requires us to (1) determine whether the claimant has a property interest, then (2) determine whether she received adequate process before being deprived of that interest. Ciambriello v. Cty. of Nassau, 292 F.3d 307, 313 (2d Cir.2002).[1]
 
 
 20
 It is clear that Harhay had a contractual right, according to the terms of the CBA, to be reappointed to any vacant position for which she was qualified. Property interests under the Due Process Clause are "created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." Bd. of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). To determine whether a contractual right can be characterized as a constitutionally protected property interest, "a court must look to whether the interest involved would be protected under state law and must weigh the `importance to the holder of the right.'" Ezekwo v. NYC Health & Hospitals Corp., 940 F.2d 775, 783 (2d Cir.1991) (quoting Brown v. Brienen, 722 F.2d 360, 364 (7th Cir.1983)). However, "[n]ot every contractual benefit rises to the level of a constitutionally protected property interest." Ezekwo, 940 F.2d at 782.
 
 
 21
 "A public employee has a property interest in continued employment if the employee is guaranteed continued employment absent `just cause' for discharge." Ciambriello, 292 F.3d at 313 (citing Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir.1991)). In Ezekwo, a contractual right of promotion to the position of Chief Resident in a public hospital was found to constitute a significant property interest that would be protected under state law. 940 F.2d at 783. Harhay's right to reappointment — explicitly delineated with the establishment of a "reappointment list" in her employment contract — is a property interest for the purposes of due process analysis. Her contractual right is defined and enforced by Connecticut law under the CBA. Furthermore, it can — and should — be characterized as an "important" interest —as opposed to a "trivial and insubstantial" interest — as it directly affects her right to be employed at all. See id. This Circuit, in other contexts, has held that tenured public employees have a constitutionally protected property interest in their employment. See, e.g., DeMichele v. Greenburgh Cent. Sch. Dist. No. 7, 167 F.3d 784, 789 (2d Cir.1999) (a public school teacher has a property interest in his tenure and cannot be fired without due process). Likewise, we hold here that Harhay had a property interest in her reappointment to a vacant position of which she could not be deprived without due process.
 
 
 22
 Finding a protected property interest is not sufficient, however, to satisfy the first step of the qualified immunity test. In order to establish that Harhay has alleged a violation of a constitutional right, we must now determine whether Harhay was owed any additional process before she could be deprived of that interest. Ezekwo, 940 F.2d at 783. While Harhay has a property interest in her reappointment right, that interest is a constitutionally protected right only in the sense that the Board cannot deprive her of it without due process. The Constitution determines what process Harhay was due. See Ciambriello, 292 F.3d at 319. This inquiry requires us to consider:
 
 
 23
 First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail. Mathews v. Eldridge, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).
 
 
 24
 The CBA, which governed Harhay's employment, established a grievance and arbitration procedure, and Harhay took advantage of these procedures by filing two grievances that were considered by the Board and by pursuing arbitration. Courts have held that such post-deprivation procedures, providing for a hearing to contest a challenged employment decision, are sufficient to satisfy due process. See e.g., Narumanchi v. Bd. of Trustees of Conn. State Univ., 850 F.2d 70, 72 (2d Cir.1988); Wojcik v. Mass. State Lottery Comm'n, 300 F.3d 92, 102 (1st Cir.2002) (pre-deprivation notice and "the full arbitration afforded by the collective-bargaining agreement w[ere] more than sufficient to satisfy" due process requirements). Harhay, however, does not challenge the adequacy of the process available to her under the CBA, nor does she argue that any additional process was due. Given her failure to articulate any way in which the Board's established procedures failed to provide her with adequate procedural protection, Harhay's constitutional claim fails.[2]
 
 
 25
 Harhay did not allege any actual violation of procedural due process, and, as noted above, she does not claim that her property interest was protected by substantive due process. Therefore, we reverse the district court's decision on the issue of qualified immunity. Packman and the Board members are entitled to qualified immunity on the grounds that no constitutional right would have been violated if Harhay's allegations were proven.
 
 CONCLUSION
 
 26
 For the foregoing reasons, the district court's decision denying legislative immunity is affirmed. The district court's decision denying qualified immunity is reversed in part and the case is remanded with instructions to enter judgment for Packman and the Board members on plaintiff's due process claim.
 
 
 
 Notes:
 
 
 *
 The Honorable Richard W. Goldberg, Judge, United States Court of International Trade, sitting by designation
 
 
 [1]
 Plaintiff's complaint asserts that defendants violated her "rights to employment as a tenured teacher with express contractual rights...in violation of the due process clause of the United States Constitution." Pl. Complaint at ¶ 41. The district court construed her complaint as alleging a violation of procedural due process, and defendants have addressed her claim in those terms on appeal. Plaintiff does not argue that the district court erred in so characterizing her claim, and her arguments on appeal do not invoke substantive due process. Accordingly, consistent with the prior, unopposed treatment of this claim by the district court, we construe Harhay's complaint as alleging a violation of procedural due process
 
 
 [2]
 We express no view on the merits of plaintiff's claim that defendants breached the terms of the CBA or interfered with her contractual relations by refusing to accept Berkowitz's resignation, allegedly in an effort to prevent her from being reinstated