10-669-pr
McGarry v. Pallito, et al.

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

_____

August Term, 2011

(Argued: March 7, 2012                                    Decided: August 3, 2012)

Docket No. 10-669-pr

_____

FINBAR MCGARRY

*Plaintiff-Appellant*,

v.

ANDREW PALLITO, Commissioner, Vermont Department of Corrections (sued in his individual capacity), GREG HALE, Superintendent, Chittenden Regional Correctional Facility (sued in his individual capacity), RICHARD BYRNES, CLUS, Chittenden Regional Correctional Facility (sued in his individual capacity), RICHARD GALLOW, Chittenden Regional Correctional Facility (sued in his individual capacity), JOE WOLSKE, Chittenden Regional Correctional Facility (sued in his individual capacity), JOHN CANNON, Chittenden Regional Correctional Facility (sued in his individual capacity), FORCIER, CO, Chittenden Regional Correctional Facility (sued in his individual capacity), SHERYLYN MATTHANS, Chittenden Regional Correctional Facility (sued in her individual capacity), JEFF COBB, Chittenden Regional Correctional Facility (sued in his individual capacity), PAUL CROSS, Chittenden Regional Correctional Facility (sued in his individual capacity), SAMUEL SANTOS, Chittenden Regional Correctional Facility (sued in his individual capacity), MICHAEL LIFF, Chittenden Regional Correctional Facility (sued in his individual capacity), VARIOUS TURNKEYS, Chittenden Regional Correctional Facility (sued in their individual capacities), EVELYN CUSHINGS, Vermont Department of Labor (sued in her individual capacity), VARIOUS LAWYERS, Vermont Department of Labor (sued in their individual capacities), WILLIAM SORRELL, Office of Vermont Attorney General (sued in his individual capacity), STATE OF VERMONT,[1]

*Defendants-Appellees*.

Before: KATZMANN, B.D. PARKER, and WESLEY, *Circuit Judges*.

---

[1]        The Clerk of the Court is directed to amend the official caption of this action to conform to the caption listed above.

Plaintiff-Appellant Finbar McGarry brought a suit pursuant to 42 U.S.C. § 1983 alleging that Defendants-Appellees violated his Thirteenth Amendment right to be free from involuntary servitude. The United States District Court for the District of Vermont (Murtha, *J.*) granted defendants' motion to dismiss, and McGarry appealed. We hold that McGarry has stated a claim for relief under the Thirteenth Amendment. Accordingly, the judgment below is **REVERSED and REMANDED.**

_____

DANIEL ALLAN MCLAUGHLIN (ARAVIND RATNAM GANESH, *on the brief*) Sidley Austin LLP, New York, NY, *for Plaintiff-Appellant*.

DAVID MCLEAN, Assistant Attorney General, for William H. Sorrell, Attorney General of the State of Vermont, *for Defendants-Appellees*.

BARRINGTON D. PARKER, *Circuit Judge*:

Plaintiff-Appellant Finbar McGarry appeals from a judgment of the United States District Court for the District of Vermont (Murtha, *J.*) dismissing his *pro se* complaint, which alleged that Defendants-Appellees ("defendants") violated his Thirteenth Amendment right to be free from involuntary servitude.[2] McGarry alleges that while he was a pretrial detainee at the Chittenden Regional Correction Facility ("CRCF") in Vermont, prison officials compelled him to work in the prison laundry under threat of physical restraint and legal process. The district court dismissed the complaint, reasoning that McGarry failed to state a claim under the Thirteenth Amendment because he did not allege that his work in the laundry was "like the

---

[2] In addition, McGarry's *pro se* complaint alleged (1) violation of his First Amendment rights related to access to reading materials; (2) violation of his First and Sixth Amendment rights arising from restrictions on his access to mail and telephone communication with his attorney; (3) and violations of the Fair Labor Standards Act, 29 U.S.C. § 201. The district court dismissed all claims. McGarry appeals only from the dismissal of his Thirteenth Amendment claim.

slavery that gave rise to the enactment of [the Thirteenth] Amendment." *McGarry v. Pallito*, No. 1:09-CV-128, 2010 WL 679056, at * 8 (D. Vt. Feb. 27, 2010). On appeal, McGarry contests the dismissal. We agree with him and hold that his complaint plausibly states a claim under the Thirteenth Amendment. We also hold that, at this preliminary stage in the proceedings, defendants have not established an entitlement to qualified immunity. Accordingly, we reverse the judgment of the district court and remand for further proceedings.

**BACKGROUND**

The following facts are drawn from McGarry's *pro se* pleadings, which we construe liberally. *See Weixel v. Bd. of Educ. of City of N.Y.*, 287 F.3d 138, 145-46 (2d Cir. 2002). In December 2008, Vermont police arrested McGarry on charges stemming from a domestic dispute. The State denied his bail application and remanded him to the CRCF, where he remained until his release in June 2009. All charges against him were subsequently dismissed. CRCF houses approximately 200 persons, including both federal and state pretrial detainees and sentenced inmates. The facility is divided into different living units, referred to as Houses. McGarry alleges that all inmates in House 1, including pretrial detainees, are required to work in the prison facility. Defendants essentially concede this point but seek to justify the work requirement for convicted inmates as well as pretrial detainees on the ground that it serves a legitimate rehabilitative interest in "educating offenders about real world responsibilities." Appellees' Br. at 3.

McGarry alleges that in mid-February 2009 defendants directed him to move to House 1 and required him to work in the prison laundry over his repeated objections. He alleges that he

3

had no choice because defendants told him that his refusal to work would result in his being placed in administrative segregation or "put in the hole," which, he alleges, involves lock-up for 23 hours-a-day and the use of shackles. McGarry further alleges that defendants told him that he would receive an Inmate Disciplinary Report ("DR") if he refused to work, and that even minor DRs affect when sentenced inmates are eligible for release.

McGarry alleges that he was compelled to work long hours in the prison laundry in hot, unsanitary conditions. He alleges that the bathroom adjacent to the laundry room was bolted shut and that, although he was required to handle other inmates' soiled clothing, he was not provided with gloves or access to a sink or hand-cleaning products. He further alleges that he was required to work under these conditions on shifts lasting up to fourteen hours per day, three days a week. Finally, he alleges that his work in the laundry caused a painful staph infection in his neck that manifested itself as a series of reoccurring lesions.

After unsuccessfully grieving these conditions, McGarry filed a *pro se* complaint against various prison officials.[3] Defendants moved under Rule 12(b)(6) to dismiss McGarry's complaint. The court referred the motion to Magistrate Judge John M. Conroy, who issued a Report and Recommendation ("R&R") recommending, *inter alia*, that McGarry's Thirteenth Amendment claim be dismissed. *McGarry*, 2010 WL 679056, at *1. The Magistrate *sua sponte* concluded that McGarry's Thirteenth Amendment allegations were barred as a matter of law

---

[3] Because McGarry's claim was dismissed solely on the ground that he failed to state a claim under the Thirteenth Amendment, the district court never reached the question of whether the complaint correctly named the responsible prison officials or sufficiently pleaded the involvement of each individual defendant. The adequacy of the complaint in this regard is best considered in the first instance by the district court. *See Farricielli v. Holbrook*, 215 F.3d 241, 246 (2d Cir. 2000) (per curiam); *see also Fulton v. Goord*, 591 F.3d 37, 45 (2d Cir. 2009).

4

because being forced to work in the laundry was "nothing like the slavery that gave rise to the enactment of [the] Amendment." *Id*. at *8. Finding that McGarry's "laundry claim" failed "to allege labor that was akin to African slavery," *id*. at *6 (internal quotation marks omitted), the Magistrate recommended dismissing his claim and denying leave to amend, holding that any other outcome would "trivialize the pain and anguish that the Thirteenth Amendment sought to remedy." *Id.* (quoting *Ford v. Nassau Cnty. Exec.*, 41 F. Supp. 2d 392, 401 (E.D.N.Y. 1999)). The district court adopted the R&R in full and dismissed the complaint. *Id*. at *1. This appeal followed.

On appeal, McGarry contends that his allegations of work compelled by threats of physical force or legal sanction state a claim under the Thirteenth Amendment. Defendants contend that compelled work is insufficient to state a claim and that McGarry must also allege that the work was similar to African slavery, a condition which -- defendants contend -- is not present here, and that, in any event, they are entitled to qualified immunity. We review the dismissal of McGarry's Thirteenth Amendment claim *de novo. See Papelino v. Albany Coll. of Pharmacy of Union Univ*., 633 F.3d 81, 88 (2d Cir. 2011). In conducting this review, we construe the complaint liberally, "accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Chase Grp. Alliance LLC v. City of N.Y. Dep't of Fin*., 620 F.3d 146, 150 (2d Cir. 2010) (internal quotation marks omitted). We are cautious about the hasty dismissal of complaints alleging civil rights violations. *See Gregory v. Daly*, 243 F.3d 687, 691 (2d Cir. 2001).

**DISCUSSION**

The Thirteenth Amendment provides that "[n]either slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction." U.S. Const. amend. XIII, §1. Shortly after its passage, the Supreme Court held that the Amendment "is not a mere prohibition of State laws establishing or upholding slavery, but an absolute declaration that slavery or involuntary servitude shall not exist in any part of the United States." *Civil Rights Cases*, 109 U.S. 3, 20 (1883). Contrary to the district court's conclusion, it is well-settled that the term "involuntary servitude" is not limited to chattel slavery-like conditions. The Amendment was intended to prohibit all forms of involuntary labor, not solely to abolish chattel slavery. *See Slaughter-House Cases*, 83 U.S. 36, 69 (1872) ("The word servitude is of larger meaning than slavery . . . ."); *see also Pollock v. Williams*, 322 U.S. 4, 17-18 (1944) (noting that the "undoubted aim of the Thirteenth Amendment . . . was not merely to end slavery but to maintain a system of completely free and voluntary labor throughout the United States"). Although passed in response to the scourge of American slavery, the Amendment is "not a declaration in favor of a particular people," *Hodges v. United States*, 203 U.S. 1, 16 (1906), *overruled in part on other grounds*, *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409 (1968), but extends to "reach[] every race and every individual," *id*. In *United States v. Nelson*, 277 F.3d 164, 178 (2d Cir. 2002), for example, we held that Jews were among the "races" protected by the Thirteenth Amendment.

Because the Thirteenth Amendment "denounces a status or condition, irrespective of the manner or authority by which it is created," *Clyatt v. United States*, 197 U.S. 207, 216 (1905),

6

institutions housing pretrial detainees are not exempt from the Amendment's scope. McGarry was not "duly convicted," U.S. Const. amend XIII, and therefore does not fall within the category of persons to whom the Amendment, on its face, does not apply. Of course, persons sometimes may be detained in advance of securing a conviction. *See United States v. Salerno*, 481 U.S. 739, 741 (1987). On entering state custody, pretrial detainees surrender "[m]any of the liberties and privileges enjoyed by other citizens" even though they are still clothed in the presumption of innocence.[4] *See Overton v. Bazzetta*, 539 U.S. 126, 131 (2003). However, although a state may subject a pretrial detainee to restrictions and conditions of the detention facility, such conditions may not violate the Constitution. *See Bell v. Wolfish*, 441 U.S. 520, 533, 536-37 (1979). Pretrial detainees are not outside the ambit of the Thirteenth Amendment's involuntary servitude provision.[5]

In *United States v. Kozminski*, 487 U.S. 931, 952 (1988), the Supreme Court defined involuntary servitude as "a condition of servitude in which the victim is forced to work for the defendant by the use or threat of physical restraint or physical injury, or by the use or threat of coercion through law or the legal process." *Kozminski* did not break new ground. This Court in *United States v. Shackney*, 333 F.2d 475, 486 (2d Cir. 1964) concluded that work obtained or maintained by the use or threatened use of physical or legal coercion is "akin to African slavery, although without some of the latter's incidents." (internal quotation marks omitted). Indeed, we

---

[4] And it is obvious to us that conditions of confinement, pre-trial as well as post-conviction, are not intended to be -- and rarely are -- pleasant.

[5] Consistent with that position, federal corrections regulations provide that "[a] pretrial inmate may not be required to work in any assignment or area other than housekeeping tasks in the inmates' own cell and in the community living area, unless the pretrial inmate has signed a waiver of his or her right not to work." 28 C.F.R. § 545.23(b).

noted that it "would be grotesque to read 'involuntary servitude' as not covering a situation where an employee was physically restrained by guards," or where servitude was created "by a credible threat of imprisonment." *Id.*

McGarry's allegations state a claim under the Thirteenth Amendment. He alleges that his work in the prison laundry was compelled and maintained by the use and threatened use of physical and legal coercion. He supports his allegations with well-pleaded facts that the defendants threatened to send him to "the hole" if he refused to work and that he would thereby be subjected to 23 hour-per-day administrative confinement and shackles. These allegations plausibly allege "threat of physical restraint or physical injury" within the meaning of *Kozminski*. *See Kozminski*, 487 U.S. at 952. Likewise, McGarry also plausibly alleges facts supporting his assertion that defendants coerced him through legal process by threatening him with DRs, which are alleged to be taken into consideration when making recommendations for a release date and, therefore, lengthen any period of incarceration.

On appeal, defendants do not seriously contest that what was required of McGarry constituted work or that it was coerced.[6] Instead they contend that, on the face of the pleadings, they are entitled to qualified immunity. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457

---

[6] Although defendants' (12)(b)(6) motion to the district court argued that McGarry's work was voluntary, they did not pursue this argument on appeal. On appeal, they principally contend that his claim must be dismissed because permitting it to go forward "would demean and trivialize the deep significance of the Thirteenth Amendment in the history of this country." Appellees' Br. at 12.

U.S. 800, 818 (1982)). Defendants are entitled to qualified immunity "if either (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." *Anderson v. Recore*, 317 F.3d 194, 197 (2d Cir. 2003) (internal quotation marks omitted). To be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). In determining whether a right is clearly established, we consider "(1) whether the right was defined with reasonable specificity; (2) whether Supreme Court or court of appeals case law supports the existence of the right in question, and (3) whether under preexisting law a reasonable defendant would have understood that his or her acts were unlawful." *Scott v. Fischer*, 616 F.3d 100, 105 (2d Cir. 2010). In assessing objective reasonableness, we look to whether "officers of reasonable competence could disagree on the legality of the defendant's actions." *Lennon v. Miller*, 66 F.3d 416, 420 (2d Cir. 1995) (internal quotation marks omitted).

The defendants seek qualified immunity on two grounds. First, they contend it was objectively reasonable for defendants to believe they could compel pretrial detainees to work because the work program advances a legitimate interest in rehabilitation. Specifically, they contend it was permissible to compel pretrial detainees to work in order to "impart skills and habits that would ease the process of reintegrating into free society" in light of the "State['s] legitimate interest in reforming its inmates." Appellees' Br. at 16. Secondly, defendants contend that a housekeeping exception for inmates exists under the Thirteenth Amendment and, consequently, it was objectively reasonable to assume that pretrial detainees can be "required to perform housekeeping chores while incarcerated." *Id*. at 33.

9

Turning to the first ground, we are mindful that federal courts must afford "appropriate deference and flexibility to state officials trying to manage a volatile [prison] environment." *Sandin v. Conner*, 515 U.S. 472, 482 (1995). However, it is clearly established that a state may not "rehabilitate" pretrial detainees. The Supreme Court has unambiguously and repeatedly held that a state's authority over pretrial detainees is limited by the Constitution in ways that the treatment of convicted persons is not. In *McGinnis v. Royster*, 410 U.S. 263, 273 (1973) the Supreme Court concluded that "it would hardly be appropriate for the State to undertake in the pretrial detention period programs to rehabilitate a man still clothed with a presumption of innocence." *See also Bell*, 441 U.S. at 536 (noting that a state may "detain [a person] to ensure his presence at trial and may subject him to the restrictions and conditions of the detention facility so long as those conditions and restrictions do not amount to punishment, *or otherwise violate the Constitution*.") (emphasis added)); *Houchins v. KQED, Inc*. 438 U.S. 1, 37-38 (1978) (Stevens, *J*., dissenting) (noting that certain penological objectives, such as punishment, deterrence, and rehabilitation, are inapplicable to pretrial detainees); *cf. Salerno*, 481 U.S. at 747 (distinguishing between "impermissible punishment" and "permissible regulation" of pretrial detainees).

This Court also has held that, while the State has legitimate interests in the health, safety, and sanitation of the correctional facility and its inhabitants, where pretrial detainees are concerned, those interests do not include rehabilitation. *See United States v. El-Hage*, 213 F.3d 74, 81 (2d Cir. 2000) ("Where the regulation at issue imposes pretrial, rather than post-conviction, restrictions on liberty, the legitimate penological interests served must go beyond the traditional objectives of rehabilitation or punishment.") (internal quotation marks

omitted)).  In light of this authority, it was clearly established that prison officials may not rehabilitate pretrial detainees, and it was not "objectively reasonable" for defendants to conclude otherwise.[7]

Defendants assert a second basis for qualified immunity, that "cases addressing the rights of pretrial detainees undermine the argument that a reasonable defendant would have understood that compelled housekeeping work violates constitutional rights."  Appellees' Br. at 33.  In *Jobson v. Henne*, 355 F.2d 129 (2d Cir. 1966), we assumed, without holding, that the Thirteenth Amendment does not foreclose states from requiring lawfully committed inmates to perform certain chores without compensation.  *Id.* at 131.  We premised this assumption on the understanding that the program in question "ha[s] a therapeutic purpose, or [is] reasonably related to the inmate's housekeeping or personal hygienic needs."  *Id.* at 132 n.3.  The "personal" nature of the exception was required because "[a]ll understand  . . . . [the Thirteenth Amendment to ban] a condition of enforced compulsory service of *one to another*."  *Hodges*, 203 U.S. at 16 (emphasis added).  Where a detainee is required to perform personally-related chores, this work is not "for another."  We made clear that "the Thirteenth Amendment may be violated if a[n] . . . institution requires inmates to perform chores which . . . are not personally related, but are required to be performed solely in order to assist in the defraying of institutional costs."  *Jobson*, 355 F.2d at 132 n.3.

---

[7]      Normally, where it is alleged that a "a prison restriction infringes upon a specific constitutional guarantee," this Court will evaluate the restriction "in light of institutional security. Security is the main objective of prison administration; prison officials must have broad latitude to adopt rules that protect the safety of inmates and corrections personnel and prevent escape or unlawful entry." *United States v. Cohen*, 796 F.2d 20, 22 (2d Cir. 1986).  Here, however, defendants advance no security-related rationale for compelling detainees to do the institution's laundry.

We are prepared to continue to assume that correctional institutions may require inmates to perform personally related housekeeping chores such as, for example, cleaning the areas in or around their cells, without violating the Thirteenth Amendment. However, on a motion to dismiss, "it is the defendant's conduct as alleged in the complaint that is scrutinized for objective legal reasonableness." *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996) (internal quotation marks and emphasis omitted). As such, we look to the complaint to determine if, at the pleading stage, defendants are entitled to qualified immunity. It is clearly established that requiring hard labor of pretrial detainees -- persons not "duly convicted" -- violates the Thirteenth Amendment. *See* U.S. Const. amend. XIII, § 1. Reviewing the allegations of the complaint in the light most favorable to McGarry, we conclude that a pretrial detainee's compelled work in a laundry for up to 14 hours a day for three days a week doing other inmates' laundry cannot reasonably be construed as personally related housekeeping chores and that officers of reasonable competence could not disagree on these points. *See Anderson*, 483 U.S. at 639. Accordingly, we conclude that, at this stage of the proceeding, defendants have not demonstrated that they are entitled to qualified immunity.

## CONCLUSION

The judgment of the district court is REVERSED and the case is REMANDED to the district court for further proceedings in accordance with this opinion.

12