DRONEY, Circuit Judge,
dissenting:
I respectfully dissent from the majority’s resolution of both the due process and First Amendment claims. I cannot conclude that the allegations in Looney’s complaint call for qualified immunity and warrant dismissal at this juncture. As to Looney’s procedural due process claim, the allegations of the representations and conduct by defendant First Selectman Black and the other Town officials, and the importance of the salary and benefits to Looney, are sufficient to show that he had a property right to full-time employment protected by procedural due process during his four-year statutory term as a Building Official. As to Looney’s First Amendment retaliation claim, the allegations in the complaint sufficiently demonstrate that Looney’s speech was made as a private citizen and on a matter of public concern. Although discovery may uncover facts to the contrary, it would be premature to conclude otherwise on a motion to dismiss. Accordingly, I would affirm the district court’s denial of qualified immunity.
I. Procedural Due Process Claim
Qualified immunity may only be granted if an official has met his burden in demonstrating that no rational jury could conclude “(1) that the official violated a statu *714 tory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct.” Ashcroft v. al-Kidd, — U.S.-, 131 S.Ct. 2074, 2080, 179 L.Ed.2d 1149 (2011) (internal quotation marks omitted). “A Government official’s conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right.” Id. at 2083 (alterations and internal quotation marks omitted). “The question is not what a lawyer would learn or intuit from researching case law, but what a reasonable person in [the] defendant’s position should know about the constitutionality of the conduct.... [W]e use an objective standard for judging the actions of state and federal officials.” Coollick v. Hughes, 699 F.3d 211, 220 (2d Cir.2012) (internal citations and quotation marks omitted). Under this standard, Looney’s factual allegations, if accepted as true, would have led the defendants to conclude that reducing Looney’s compensation and eliminating his benefits without a hearing violated his right to due process.
Looney has sufficiently alleged in his complaint that he had a protected property interest in his status as a full-time employee during the period of his appointment as Building Official under this Court’s prior holdings in Ezekwo v. NYC Health & Hospitals Corp., 940 F.2d 775 (2d Cir.1991), Ciambriello v. County of Nassau, 292 F.3d 307 (2d Cir.2002), and Harhay v. Town of Ellington Board of Education, 323 F.3d 206 (2d Cir.2003). Looney alleged that in 1994, when he was appointed to his first statutory term as the Marlborough Building Official, the job advertisement set forth a salary and “pension/benefits package” that were only available to fulltime employees of the Town. He also alleged that the then-First Selectman specifically told Looney at the time he accepted the position that the Building Official role was a full-time position with the benefits of other full-time employees, such as pension, healthcare, sick leave, and vacation time. In addition, Looney alleged that the Town’s personnel rules and regulations designated him as a “full-time employee entitled to all benefits provided to full-time employees.”
Looney alleged that he was reappointed four more times by the Board of Selectmen “as a full time Building Official,” and he enjoyed full-time salary and benefits during his entire sixteen years as the Building Official without any indication that he could be reduced from his full-time status. During this period, he received a salary and the same benefits as all other full-time Marlborough employees. The complaint also alleged that in 2007, a collective bargaining agreement entered into by the Town recognized the Building Official position as full-time.[1] It was only in 2010 after Looney spoke out against the actions of Town officials that he was reduced to part-time status and his benefits were terminated. Our prior decisions require due process protection for Looney so *715 that he was at least entitled to a hearing before this reduction in his pay and benefits.
In Ezekwo, we considered whether the plaintiff had a property interest in serving as chief ophthalmology resident at the defendant Harlem Hospital Center, which was operated by New York City. The hospital had historically awarded the position to all ophthalmology residents in the last year of their three-year residencies. Ezekwo, 940 F.2d at 777-78. However, after the plaintiff began writing letters to the hospital complaining about various working conditions, the hospital decided to change the policy for selecting chief ophthalmology residents to what it claimed was a “merit-based” program and denied the plaintiff the chief resident status. Id. at 778-79. In concluding that the plaintiff enjoyed a property interest in the position of chief resident, we focused on two factors. First, we observed a “course of conduct” in which the hospital had consistently offered explicit reassurances to the plaintiff, including verbal statements from supervisors and written informational documents, that she would rotate into the chief resident position. See id. at 783. Second, we highlighted “the importance to the holder of the right.” Id. (quoting Brown v. Brienen, 722 F.2d 360, 364 (7th Cir.1983)). We found that the plaintiffs interest in serving as chief resident was sufficiently important because her interest “was more than merely financial” and because the position, “due in large part to the very nature of medical training itself, was of significant professional value.” Id. Accordingly, we found that the plaintiffs “expectation of performing the duties of Chief Resident was reasonable and well founded and rose to the level of a property interest entitled to the protections afforded by the Due Process Clause.” Id.
In Ciambriello, we concluded that a civil service employee enjoyed a protected property interest in his position as a maintenance mechanic and thus was entitled to a hearing when his employer sought to demote him back to his former position as equipment operator. 292 F.3d at 318. As in Ezekwo, we focused on the course of conduct toward the plaintiff and concluded that he had a reasonable expectation that he would retain his position — in that case, based on the terms of a collective bargaining agreement. Also, as in Ezekwo, we emphasized that the plaintiffs interest in his position, while not a “once-in-a-lifetime opportunity!,] is still significant.” 292 F.3d at 318. “After working for the County for nearly five years, [the plaintiff] was promoted to a position that entailed higher pay and greater benefits. [The plaintiff] served in the higher position for well over two years, only to be returned to his original position and salary.” Id. We therefore had “no trouble concluding that this right was a property right of sufficient importance to [the plaintiff] to warrant constitutional protection.” Id. (emphasis added).
In Harhay, we concluded that a previously terminated public school teacher possessed a property interest in her position on a “reappointment list” for purposes of determining whether she would be rehired when a vacancy occurred. 323 F.3d at 209, 212. Although we also concluded that the plaintiff had been afforded adequate process through the grievance procedure in her collective bargaining agreement, in determining whether she had a due process right in the possibility of reappointment we emphasized the importance to the plaintiff of the reappointment protection. See id. at 212-13. As in Ezekwo and Ciambriello, we underscored that the plaintiffs position on the reappointment list “can — and should — be characterized as an ‘important’ interest as opposed to a ‘trivial and insubstantial’ interest — as it directly affects her right to be employed at all.” Id. (quoting Ezekwo, 940 F.2d at 783).
*716 These decisions emphasize the importance of a course of conduct on which a plaintiff might reasonably rely to establish a property right in the interest in question. However, they do not require, as the majority concludes, that this course of conduct be established through a “written or spoken guarantee as to the terms of [the plaintiffs] employment.” As we held in Ezekwo, “[additional contractual provisions may be ‘implied’ into a contract as a result of a course of dealing between the parties. The parties through their conduct and practice can create additional rights and duties.” 940 F.2d at 782 (citing Perry v. Sindermann, 408 U.S. 593, 602, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972)). The allegations here of the initial representations to Looney for his first appointment, the advertisement for the position, the Town personnel rules and regulations, and the collective bargaining agreement, as well as Looney’s reappointment each time over the course of sixteen years to the position of a “full-time Building Official” without any diminutions of his hours or compensation, are sufficient to allege a course of conduct that implicates a property interest in full-time employment.[2] Even if the majority is correct that the bar for such a property interest is set so high as to require a “written guarantee or explicit indication,” I also believe that the allegations in the complaint reach it.[3]
As to the “importance to the holder of the right,” Ezekwo, 940 F.2d at 783 (internal quotation marks omitted), Looney lost all his health and retirement benefits as well as a significant amount of salary due to the reduction in his hours. If the suspension of a university professor for two weeks without pay implicates a protected property interest, see Narumanchi v. Bd. of Trs., 850 F.2d 70, 72 (2d Cir.1988), then *717 surely such a reduction in a Building Official’s compensation and the elimination of his benefits require due process protections as well. While there is “no allegation that his [position] was a once-in-a-lifetime opportunity!,] the interest is still significant.” Ciambriello, 292 F.3d at 318. I therefore conclude that Looney has adequately alleged a clearly established, constitutionally protected interest in his full-time employment, and that Black is therefore not entitled to qualified immunity as to Looney’s due process claim at this stage of the litigation.
II. First Amendment Claim
The complaint also contains sufficient allegations that Looney’s speech merited the protections of the First Amendment. A public employee is not protected by the First Amendment only if the speech at issue “owed its existence to [the plaintiffs] job duties and was made in furtherance of those duties.” Ross v. Breslin, 693 F.3d 300, 308 (2d Cir.2012). Evidence about both the specific content of Looney’s speech to the Marlborough residents and Looney’s job responsibilities must be presented before it would be appropriate to dismiss his claim on the ground of qualified immunity.
“In order to establish a First Amendment retaliation claim, plaintiffs must prove that: (1) they engaged in constitutionally protected speech because they spoke as citizens on a matter of public concern; (2) they suffered an adverse employment action; and (3) the speech was a ‘motivating factor’ in the adverse employment decision.” Skehan v. Vill. of Mamaroneck, 465 F.3d 96, 106 (2d Cir.2006), overruled on other grounds, Appel v. Spiridon, 531 F.3d 138, 140 (2d Cir.2008) (per curiam). To demonstrate that the plaintiff was speaking as a “citizen,” the plaintiff must show that he was not speaking “pursuant to [his] official duties.” Ross, 693 F.3d at 305 (quoting Garcetti v. Ceballos, 547 U.S. 410, 421, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006)). If the plaintiff satisfies the three prongs of the Skehan test, the
defendants may nevertheless escape liability if they can demonstrate that either (1) the defendant would have taken the same adverse action against the plaintiff regardless of the plaintiffs speech; or (2) the plaintiffs expression was likely to disrupt the government’s activities and that the harm caused by the disruption outweighs the value of the plaintiffs expression.
Skehan, 465 F.3d at 106. It is clear that Looney suffered an “adverse employment action” in this case, and Looney has adequately alleged in his complaint that his speech motivated the defendants’ decision to reduce his compensation and benefits.[4] *718 As a result, the critical questions are whether Looney was speaking on a matter of public concern and whether he was speaking as a private citizen or “pursuant to” his official duties.
As to the first question regarding the content of the statements, Looney’s factual allegations sufficiently indicate that he was speaking on a matter of public concern. The Supreme Court has defined “matters of public concern” to include “any matter of political, social, or other concern to the community.” Connick v. Myers, 461 U.S. 138, 146, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). “Whether an employee’s speech addresses a matter of public concern is a question of law for the court to decide, taking into account the content, form, and context of a given statement as revealed by the whole record.” Lewis v. Cowen, 165 F.3d 154, 163 (2d Cir.1999).
The category of issues of “public concern” discussed in Connick has been interpreted broadly to include commenting on policy decisions affecting the public fisc, see Lewis, 165 F.3d at 163-64, and raising concerns “about the lawfulness of public officials’ actions,” Hoyt v. Andreucci, 433 F.3d 320, 330 (2d Cir.2006). Here, according to his second amended complaint, Looney was communicating with a “Town resident regarding wood burning boiler/stove and smoke discharge as public health concerns” and with members of the public about an “outside agency enforcing a cease and desist order against Town residents.”[5] These statements are commentary on public health issues and regulatory enforcement actions, and thus address a matter of public concern.
The allegations of the complaint are also sufficient to show that Looney was speaking as a private citizen, rather than “pursuant to [his] official duties.” Ross, 693 F.3d at 305 (internal quotation marks omitted). The Supreme Court defines speech made “pursuant to” a public employee’s job duties as “speech that owes its existence to a public employee’s professional responsibilities.” Garcetti, 547 U.S. at 421, 126 S.Ct. 1951. The inquiry into whether speech is “pursuant to” one’s official duties is a “practical one” under which
[fjormal job descriptions often bear little resemblance to the duties an employee actually is expected to perform, and the listing of a given task in an employee’s written job description is neither necessary nor sufficient to demonstrate that conducting the task is within the scope of the employee’s professional duties for First Amendment purposes.
Id. at 424-25,126 S.Ct. 1951.
To determine whether speech was made “pursuant to” one’s official job duties, it is necessary to ascertain whether the speech at issue “owed its existence to [the plaintiffs] job duties and was made in furtherance of those duties.” Ross, 693 F.3d at 308 (emphasis added). In Ross, we considered whether a school district payroll clerk whose role informally included reporting suspicious payroll requests to her supervisor was entitled to First Amendment protections for writing letters to school board members containing allegations of financial malfeasance. Id. at 302-03. We concluded that the clerk was not entitled to First Amendment protection because her letters, despite being sent outside the chain of *719 command, were written “in furtherance of’ her informal reporting duties. Id. at 308. We have also held that a teacher’s complaints to a school board about the inadequate discipline of a disorderly student were “part-and-parcel” of his duties because they dealt with his ability “to maintain classroom discipline, which is an indispensable prerequisite to effective teaching and classroom learning.” Weintraub v. Bd. of Educ., 593 F.3d 196, 203 (2d Cir. 2010) (citation and internal quotation marks omitted). Conversely, we concluded that First Amendment protections applied to a police officer’s refusal to speak about a colleague’s misconduct in part because the speech “did not implicate [the plaintiffs] ability to do his own job properly.” Jackler v. Byrne, 658 F.3d 225, 240 (2d Cir.2011).
It may be that Looney’s position as Building Official made it possible for him to deliver his comments to the Marlborough residents, and so the comments may have “owed [their] existence to [Looney’s] job duties.” Ross, 693 F.3d at 308. However, Looney’s complaint sufficiently alleges that his comments were not made “in furtherance of’ his job duties — either formal or informal. After making the comments to a Marlborough resident, Looney alleges that he was admonished by his supervisor (the Director of Planning and Development for the Town of Marlborough) to “restrict his actions in the office to that of his duties and not to make determinations or engage in discussions of substantive matters outside his job duties concerning other Town agencfies] or jurisdiction[s].” Looney also alleges that he was told by that supervisor to stop “voicing his opinion regarding an outside agency enforcing a cease and desist order against Town residents.” It could be that a Building Official whose principal responsibilities are the enforcement of the state building code would be involved as part of his job with wood-burning stoves and the potential harms they pose to public health, or — less likely — that his job involved other agencies’ cease and desist orders, but such a conclusion is not clear on the basis of the pleadings alone. Indeed, Looney’s allegations indicate that, at the very least, the Town’s Planning and Development Director believed Looney’s comments fell outside his official job duties. In the absence of evidence to the contrary, I do not believe that the defendants are entitled to qualified immunity on Looney’s speech claim at this stage.
The defendants could be entitled to qualified immunity by demonstrating that Looney’s statements were “likely to disrupt the government’s activities and that the harm caused by the disruption outweighs the value of [Looney’s] expression.” Skehan, 465 F.3d at 106. For instance, the defendants could demonstrate that Looney’s comments were encouraging Marlborough residents not to comply with other local regulations. The defendants could also demonstrate that Looney occupied “an executive or policymaking position” whose “expressive activities ... will be more disruptive to the operation of the workplace than similar activity by a low level employee.” Faghri v. Univ. of Conn., 621 F.3d 92, 98 (2d Cir.2010) (internal quotation marks omitted). But I do not believe Fahgri reaches so far as to inhibit lower-level officials, such as Looney, from being able to publicly challenge Town policies based merely on the allegations presented here. As a result, I conclude that dismissing Looney’s First Amendment claim at this stage is premature.
Looney’s complaint contains sufficient allegations to withstand dismissal on the basis of qualified immunity. On a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, we must “construe the complaint liberally, accept *720 ing all factual allegations in the complaint as true, and drawing all reasonable inference in the plaintiffs favor.” McGarry v. Pollito, 687 F.3d 505, 510 (2d Cir.2012) (internal quotation marks omitted). Because Looney has sufficiently alleged a constitutionally protected interest in his status as. a full-time employee and has adequately alleged that his speech was entitled to First Amendment protections, I conclude that finding the defendants are entitled to qualified immunity would be premature at this time. As a result, I would affirm the district court’s decision denying the motion to dismiss and leave the determination of qualified immunity to another day.

. The collective bargaining agreement itself explicitly listed the Building Official as a salaried employee while other listed positions, such as "Administrative Specialist” and "Tax Clerk,” were listed as hourly positions. In addition, in their reply brief before the district court, the defendants conceded that Looney could have pursued his grievance regarding the reduction in hours, compensation, and benefits through the procedures established by the collective bargaining agreement. While Looney has not identified the collective bargaining agreement as a source for his property interest, the collective bargaining agreement does further underscore the Town’s course of conduct upon which Looney reasonably relied to believe that he had a protected interest in his status as a full-time employee.

. The majority points to Article 23 of the collective bargaining agreement, which provides the hierarchy under which the Town would implement "layoffs or reductions in hours." In reviewing a motion to dismiss, our review is "limited to the facts as presented within the four corners of the complaint, to documents attached to the complaint, or to documents incorporated within the complaint by reference.” Taylor v. Vt. Dep't of Educ., 313 F.3d 768, 776 (2d Cir.2002). "Limited quotation does not constitute incorporation by reference.” Cosmas v. Hassett, 886 F.2d 8, 13 (2d Cir.1989) (alteration and internal quotation marks omitted). Looney's brief mention of the collective bargaining agreement in his complaint does not constitute incorporation by reference under Cosmas, and so it would be inappropriate to rely on the collective bargaining agreement as a basis for resolving a motion to dismiss. However, even if the collective bargaining agreement is incorporated by reference into the complaint, Article 23 provides that layoffs within a job title would take effect in inverse order of seniority, starting with "temporary and seasonal employees,” "part-time probationary employees,” “full-time probationary employees,” and concluding "[b]y seniority of the remaining employees in the job title.” Looney was clearly not a temporary or seasonal employee, and because he had served as a Town employee for more than six months, he no longer qualified as a probationary employee under Article 13 of the collective bargaining agreement. Based on a plain reading of Article 23, Looney therefore would seem to have been on notice about a possible reduction in hours under the collective bargaining agreement only if there had previously been layoffs of temporary, seasonal, and probationary employees. However, the extent to which layoffs were occurring around the time Looney’s hours were reduced is a factual question that we cannot resolve at this juncture.

. Looney alleged that the representations regarding the full-time nature of the Building Official position were made to him the first time he was appointed Building Official. It surely is not required that those assurances needed to have been repeated to Looney explicitly each time he was reappointed to his new statutory term as Building Official, especially when he was at all times treated as a full-time employee. Nevertheless, Looney alleges that each time he was reappointed, it was "as a full-time Building Official with pension and benefits,” and he should be given the opportunity to produce evidence to that effect.

. Looney names Black, Clark, and LaBella in his complaint on the First Amendment claim. However, his complaint alleges that First Selectman Black reduced Looney’s hours without having obtained the approval of the Board of Selectmen, and that Clark and LaBella’s involvement was in recommending against reappointing Looney as Building Official in retaliation for Looney's lawsuit against the Town, and then voting against reappointing him. Nonetheless, I believe that Looney has sufficiently alleged unlawful retaliation on the part of Clark and LaBella as well as Black. See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 283-84, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977) (holding that a plaintiff may "establish a claim to reinstatement if the decision not to rehire him was made by reason of his exercise of constitutionally protected First Amendment freedoms”); see also Bernheim v. Litt, 79 F.3d 318, 327 (2d Cir. 1996) (Jacobs, J., concurring) ("It is beyond question that a state agency may not discharge, refuse to rehire, fail to promote, or demote a public employee in retaliation for speaking on a matter of public concern.”) (citing Rutan v. Republican Party, 497 U.S. 62, 75, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990), and Pickering v. Bd. of Educ., 391 U.S. *718 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968) (emphasis added)).

. Although the complaint does not say explicitly whether the outside agency enforcing the cease and desist order relating to smoke discharges from wood-burning stoves was a state or local agency, the complaint is clear that the order was enforced by an agency outside the one in which Looney was employed as Building Official and related to a subject matter that was not part of Looney’s responsibilities.